**James D. HEIDBREDER, Janet Otke, R.W. Heidbreder, Thomas R. Branstetter and Kathryn J. Branstetter, Appellants,**

v.

**James R. TAMBKE d/b/a Tambke Auto Sales, Respondent.**

**No. WD 69378.**

Missouri Court of Appeals,
Western District.

April 28, 2009.

Ashley Webb, Kansas City, MO, for appellant.

Daniel R. Green, Jefferson City, MO, for respondent.

Before JOSEPH P. DANDURAND,[1] P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

The heirs of Donald Heidbreder appeal the judgment dismissing their action

---

[1]. Judge Dandurand participated in the case at the time the case was submitted, but resigned from the court prior to handdown.

against James Tambke for repayment of a loan. They argue that dismissal was improper because they have standing to bring the action and that the action is not barred by the statute of limitations. The judgment is reversed, and the case is remanded.

## Facts

In 1997, Donald Heidbreder loaned his friend James Tambke $8,000. Heidbreder died later that year. No estate was opened within one year of his death, and no will was offered for probate during that period.

Heidbreder's heirs allege that after Heidbreder's death, Tambke made two partial payments to Heidbreder's heirs after the first year. They allege that a $1,100 payment was made in 2002 and that a $1,000 payment was made in 2004. They asserted that after the second payment, a balance of $5,900 remained.

In 2007, the appellants applied to the probate division of the Cole County Circuit Court for a judicial determination pursuant to section 473.663 that the appellants are Heidbreder's sole heirs at law and that they are therefore the owners of the balance receivable for the $8,000 loan to Tambke. The probate division granted their petition and determined the extent of their respective interests in the loan receivable. Pursuant to the determination of heirship, Heidbreder's heirs demanded payment of the balance of the debt from Tambke.

After Tambke did not pay the balance, Heidbreder's heirs filed a petition seeking a judgment against Tambke for the unpaid $5,900. They alleged that Tambke owed them the money pursuant to the determination of heirship.

Tambke filed a motion to dismiss on the basis that Heidbreder's heirs do not have standing to bring the action because only a personal representative of Heidbreder's estate would have authority to do so. Tambke also asserted that the action to collect the loan receivable is barred by the statute of limitations. The trial court issued a judgment sustaining the motion to dismiss. The judgment did not state the reason for dismissal.

Heidbreder's heirs appeal.

## Standard of Review

Review of a motion to dismiss "is a *de novo* examination of whether the petition invokes principles of substantive law." *Rychnovsky v. Cole*, 119 S.W.3d 204, 208 (Mo.App.2003). Because the trial court did not state the grounds for dismissal, this court presumes that the decision was based one of the grounds alleged in the motion to dismiss. *Id.* The dismissal will be affirmed if it was proper as a matter of law based on any ground alleged in the motion to dismiss. *Id.* Here, dismissal was asked on two grounds. One ground related to standing and one related to the statute of limitations.

## Standing

■ Heidbreder's heirs argue that dismissal was improper to the extent that it was based on lack of standing. They assert that they have the legally recognized right to pursue collection of amounts due under the oral loan agreement because they were judicially determined to be the heirs and entitled to recover the amount due on the loan. The heirs acknowledge that they were not a party to the contract and that they were not third party beneficiaries of any agreement to repay the loan. They base their claim of right to pursue this action on the judicial determination of heirship obtained pursuant to 473.663.

Section 473.663, which was added to the Missouri Probate Code in 1955, was taken

from the "Model Probate Code." Borron, *Missouri Probate Law and Practice*, 5A MISSOURI PRACTICE SERIES, section 621, at 268 (third ed.); Welch, "New Probate Code," 11 J. Mo. Bar 145, 169 (1955). Section 473.663 provides that an action for determination of the heirs of a decedent who has died leaving property, and the extent of their interest therein, may be brought by any person having an interest in the property if no administration was commenced on the decedent's estate within a year of death and if no will was presented for probate within that period.[2]

Currently, no letters of administration may be issued more than one year from the date of death. Section 473.050.6. Nor may any will be admitted to probate after one year from the date of death. Section 473.050.3(2). However, any heirs asserting inheritance of property from the decedent may apply at any time after that first year for the formal recognition of ownership of the property pursuant to 473.663. Section 473.663 states in particular that if a decedent "died leaving property or any interest in property in this state" and no administration has been had, "then any person claiming an interest in such property as heir or through an heir may file a petition in the probate division." After procedural steps have been followed, "the court shall make a decree determining the person or persons entitled to the property with respect to which a determination is sought, and their respective interest in the property as heirs or successors in interest to such heirs."

The statute refers to "the property" without any distinction as to types of property. Heidbreder's heirs argue that even before they obtained the decree of heirship, they were the rightful owners of the

decedent's cause of action; they simply lacked formal legal recognition such that they could bring an action in court. With the decree under 473.663, they assert that they are properly armed with everything needed to pursue the claim.

Tambke, in response, argues that only a personal representative can bring an action to recover a claim of a decedent's estate. *Id.* Tambke cites section 473.270, which states:

> Executors and administrators *shall collect* all money and debts of every kind due to the decedent, and give receipts and discharges therefor, and *shall commence and prosecute* all actions which may be maintained and are necessary in the course of his administration, and defend all actions brought against him.

(Emphasis added.)

Tambke asserts that this statute should be understood as granting *exclusive* authority to a personal representative to bring a claim on behalf of a deceased person. Therefore, according to Tambke, once the one-year deadline for opening an estate has passed, any effort to recover by litigation the balance of the debt is effectively barred. Under Tambke's argument, the practical effect of the one-year administration deadline is a *de facto* one-year limitations period after the death of the deceased. Tambke argues that 473.663 does not authorize suits by heirs to collect any debts owed to a decedent.

While section 473.270 clearly gives authority and responsibility to the personal representative (and not to the heirs) to bring *all* actions, the language granting the authority to the personal representative to bring "all actions" is modified by the phrase "*necessary in the course of his*

---

2. In the 1955 version, the statutory period was five years from death, because at that time an estate could be opened within five years of death. Welch, 11 J. Mo. Bar at 169 (1955).

*administration.*" The context of 473.270 is clearly limited to estate administration, whereas 473.663 addresses a scenario in which there is no estate administration. We cannot say, therefore, that section 473.270 purports to govern the matter of whether, when there is no administration of an estate, heirs may bring an action as to any right or property formerly possessed by the decedent. Accordingly, we are doubtful that 473.270 purports to rule the issue before us.

The determination of heirship statute, section 473.663, appears on its face to allow the formal recognition and declaration of the devolution of any "property" from the deceased to those entitled to succeed to the deceased's property. Tambke must, therefore, explain the application of 473.663 if indeed the statute does not accomplish what Heidbreder's heirs say that it does. The interpretation of 473.663 suggested by Tambke is that its purpose is only to clarify the ownership of property that is already in the possession of the heir (or of property as to which the right of possession is not adversely contested). It is, Tambke would seem to suggest, designed merely to settle a dispute between feuding heirs, not to declare ownership of an intangible cause of action. Tambke, however, lacks authority directly on point that would clearly limit the intended purpose of section 473.663 in that fashion.

Tambke points out that 473.663 makes no mention of an heir being entitled to bring an action. It is true that a decree pursuant to section 473.663 vests heirs with legally cognizable ownership of proceeds they already possess, and specifies how they are to divide those among each other, but the statute does not expressly say that the order would entitle them to prosecute an action in court on the contract.

In these circumstances, we look to the statutory wording and also to the historical context and framework of the statutory scheme, including any amendments to the probate laws.

Historically, an action for recovery of a debt owed the decedent could not be brought by an heir *as an heir*, but could be brought only by the personal representative. *See, e.g., Clubine v. Frazer,* 346 Mo. 1, 139 S.W.2d 529 (1940). In 1955, as we have noted, section 473.663 was enacted. Even prior to 1955, the statutes specified that in cases of small estates where there has been a refusal of letters of administration, a surviving spouse, unmarried children or even a creditor may "sue for all the property belonging to such estate." Art. 1, section 2, Mo.Rev.Stat. Ann. (West 1942; *see also* section 461.120 RSMo.1949); currently section 473.090.3. Thus, even apart from 473.663, the right to sue for recovery of the decedent's property has not, for many years, been limited to personal representatives.

If there has been an administration of an estate, an heir cannot obtain a decree under 473.663. Section 473.663 is only for instances in which there has been no administration. To that extent, therefore, the statute appears to be something of a "mop up" provision, designed to allow the subsequent resolution of pending property matters where there are heirs and there was no administration. In view of that apparent purpose, it makes sense that the word "property" in 473.663 would not be narrowly construed to exclude intangibles, such as choses of action.

Heidbreder's heirs suggest that *Aufenkamp v. Grabill,* 165 S.W.3d 191 (Mo.App. 2005) ("*Aufenkamp II* ") constitutes compelling authority for the proposition that they have the right to bring suit against Tambke. The *Aufenkamp* heirs initially brought suit in their individual capacities

(without a determination of heirship), and the case was dismissed because the court determined that they lacked the right to sue. *See id.* at 194; *Aufenkamp v. Grabill*, 112 S.W.3d 455, 460 (Mo.App.2003) ("*Aufenkamp I* "). They later filed suit *after* obtaining a determination of heirship in their favor. *Aufenkamp II*, 165 S.W.3d at 193. The defendants moved to dismiss, arguing this time that the claim was barred by the statute of limitations. *Id.* Aufenkamp's sons claimed the petition was not barred because they received the benefit of the savings statute in section 516.230 due to their earlier nonsuit when they filed without using 473.663. *Id.*

After the trial court awarded judgment to the sons, the defendants appealed. *Id.* The *Aufenkamp II* court determined that the savings statute did not benefit the heirs because the first petition had been brought by Aufenkamp's sons strictly as *sons and alleged heirs* of a party to the contract, while the second petition was brought specifically by the sons as *judicially determined* legal heirs. *Id.* The court concluded that the original suit was not authorized; thus, there could be no effect from the filing of the original suit (a legal nullity). The "savings statute" had no application. The later action was accordingly barred by the statute of limitations. *Id.*

The holding in *Aufenkamp II* was based on the only issue appealed in that case, which was whether the claim was barred by the statute of limitations. Both parties in that case evidently regarded section 473.663 as creating a right of action in the judicially determined heirs. This court also did not specifically address the issue of whether 473. 663 granted authority for the plaintiff's claim. The court either believed or assumed that section 473.663 *did* authorize the action, because the court could have resolved the case easily if it had believed that 473.663 did *not* authorize the heirs to sue. Therefore, while we cannot say that *Aufenkamp II* is *compelling* authority for the position of Heidbreder's heirs, we do think it has some value as authority—and can be considered along with the plain language of 473.663.

As we have noted, there is nothing in 473.663 which purports to limit the types of property that may be subject to a 473.663 determination. There is thus no indication that 473.663 cannot apply to ownership of a "chose in action" (a litigation claim) formerly belonging to the deceased (as opposed to other kinds of property). If a person has been declared pursuant to section 473.663 to have an ownership interest in a chose in action as an heir of the deceased, it would seem logical that the declared owner should be entitled to pursue it and recover it.

While an heir does not have authority *as an heir* to administer a decedent's estate, *Carter v. Pottenger*, 888 S.W.2d 710, 714 (Mo.App.1994), or authority pursuant to the "discovery of assets" statute to bring a proceeding thereunder, *Estate of Fox*, 955 S.W.2d 945, 948 (Mo.App.1997), we fail to see that logic would necessarily dictate that (when there has been no administration) an action by a judicially determined heir to recover a debt formerly owed to the decedent should not be permitted.[3]

---

**3.** Though Missouri has not adopted the Uniform Probate Code, the Uniform Code, in section 3–901, sets forth an objective that, even in the absence of administration, the heirs and devises are entitled to the deceased's property, and may establish legal title by showing the decedent's ownership, his death, and the relationship to the decedent. Thus, the Uniform Code contains a similar concept. Like section 473.663, the Uniform Code does not differentiate forms of "property." 8 Uniform Laws Annotated (Master ed.1998).

One might wonder, for instance, what would be the outcome if a sibling of a deceased made a discovery, more than a year after the deceased's death, that the deceased at the time of death owned a bank account or certificate of deposit in the deceased's sole name. The time for administration of the estate would have expired. Since a sibling does not qualify under the "refusal of administration" statute, the sibling's only option would be to try to obtain a decree under 473.663 as to the ownership of the bank account as an heir. If the sibling did so, but the bank were to refuse to pay the money over, would the bank be legally free to retain the money, knowing the sibling heir had no recourse because the time for administration had passed?

It would seem doubtful that such would be the intent of the statutory scheme. Indeed, it is clear under the refusal of administration statute that if there were a surviving spouse or a minor child or a creditor, that person would be able, pursuant to a refusal of letters of administration, to bring an action to recover a debt owed the decedent. Section 473.090. If a creditor would be entitled to sue under 473.090, why should not that same privilege be extended to the deceased's sister or brother?

Although we rely on Missouri law and not on a review of the laws of other states, we note that Missouri would not be the only state to allow such an action. *See, e.g., Pratho v. Zapata,* 157 S.W.3d 832, 839 (Tex.App.2005) ("an heir, rather than the estate's personal representative, may sue to recover property when the heir pleads and proves that there is no estate administration pending and none is necessary."); *Metro. Life Ins. Co. v. Lanigan,* 74 Colo. 386, 222 P. 402, 403 (1924) (the heirs may maintain an action if administration is not otherwise necessary).

For the reasons stated above, we conclude that, to the extent that the trial court determined that Heidbreder's heirs lacked standing to bring the action because they were not personal representatives, the court erred.

### *Statute of Limitations*

Heidbreder's heirs also argue that to the extent the court dismissed the action on the basis of the statute of limitations, the dismissal was improper. They assert that Tambke's partial payments on the debt tolled the statute of limitations.

"In reviewing the dismissal, this court must give the petition its broadest intendment, and allegations therein must be construed favorably to the plaintiff." *D.A.N. Joint Venture, III v. Clark,* 218 S.W.3d 455, 458 (Mo.App.2006). "[A] petition will not be dismissed on the affirmative defense of the statute of limitations unless it is absolutely clear from the face of the petition that it is time barred." *Doyle v. Crane,* 200 S.W.3d 581, 585 (Mo. App.2006). "Normally, the running of the statute is a question of law for the court to decide." *Id.* "However, when contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question fact for the jury to decide." *Id.*

Section 516.120.1 provides that the statute of limitations for "actions upon contracts, obligations or liabilities, express or implied" is five years. In their petition, Heidbreder's heirs alleged that Tambke received the loan in 1997 and made two partial payments on the loan—one in February 2002 and one in March 2004. "Generally, part payment on a debt tolls the statute of limitations." *Anderson v. Stanley,* 753 S.W.2d 98, 100 (Mo.App.1988). Tolling based on partial payment is not statutorily mandated but is, instead, a judi-

cially recognized basis for tolling. "Such a part payment acknowledges the existence of the indebtedness and raises an implied promise to pay the balance." *Id.* "Where nothing appears to show a contrary intention, the payment alone prevents the statute from barring the claim." *Id.* Heidbreder's heirs claim the March 2004 payment extended the statute of limitations to March 2009, and their petition was timely because it was filed in 2007.

In his brief, Tambke does not dispute the legal principles outlined above. Instead, he notes that Heidbreder's heirs were not legally declared heirs until 2007, after the alleged partial payments. He again argues that only a personal representative or legal heir may collect on behalf of a decedent's estate. He claims that any payments were made to the heirs in their *individual capacity* and did not toll the statute of limitations because the petition purported to be brought by the heirs in their capacity as legal heirs.

In relying on *Aufenkamp II*, Tambke fails to recognize that the court there dealt as a matter of law with the interpretation and application of the savings statute (516.230). *Aufenkamp II*, 165 S.W.3d at 194. It did not deal with an issue of tolling where the debt owed to the heirs had been acknowledged and an allegedly express or implied promise was made to pay the debt to the heirs.

Here, the people who received the alleged partial payments were the same people who had an equitable interest in the receivable at the time of the partial payment, though not a perfected title interest. Section 473.260 states as follows:

> When a person dies, his real and personal property, except exempt property, passes to the persons to whom it is devised by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as his heirs; but it is subject to the possession of the executor or administrator and to the election of the surviving spouse and is chargeable with the expenses of administering the estate, the payment of other claims and allowances to the family, except as otherwise provided in this law.

Under section 473.260, the executor or administrator generally takes *possession* of the deceased's property, but it is the deceased's heirs to whom the property actually devolves. *See, e.g., Chaney v. Cooper,* 954 S.W.2d 510, 519 n. 2 (Mo.App. 1997) (personal representative holds possession of property for heirs unless there is an order that the property is to be sold for payment of debts and administrative costs.). The legal theory, codified in 473.260, is that when a person dies, "his real and personal property ... passes to the persons ... who succeed to his estate as heirs; but it is subject to the possession of the [personal representative] and to the election of the surviving spouse and is chargeable with the expenses [of administration] and [payment of claims]...." Legal doctrine thus teaches that unformalized equitable ownership of the property of a decedent devolves to the heirs of the decedent *at the time of death,* subject to the right of a personal representative to take possession of the property, and to pay debts and expenses of administration. When there is no administration, we would suppose that the theory would be that equitable ownership of the property passes to the persons who properly succeed to the deceased's property, including any surviving causes of action, subject to any proceedings necessary to make ownership of the property legally cognizable for litigation purposes, such as a refusal of letters of administration or a determination of

heirship.[4]

Tambke lacks authority that would defeat this argument. Tambke argues that the alleged partial payments could not toll the statute of limitations because Tambke had no *legal* obligation to the heirs at the time he made any partial payments (after the death of the deceased), because at that time there had been no determination of heirship. Tambke cites *Corrales v. Murwood, Inc.*, 232 S.W.3d 609 (Mo.App.2007). In that case, the debtor sold property secured by a note and deed of trust to a third party. The third party agreed in writing to assume the debtor's liability on the note and deed of trust at the time he purchased the property. The issue before the court was whether the assumption of the debt was sufficient to toll the statute of limitations as to the claim against the original debtor. *Id.* at 613. The court held that the statute was not tolled, saying that "in order to toll the statute of limitations, the [partial] payment must be made by one originally liable." *Id.* Tambke says that the *language* from that case is applicable here (though the holding is not) because here, until the formal declaration of heirship he had no liability to the heirs. He says, thus, any partial payments were merely gifts or voluntary payments, and they could not toll the statute. This argument, of course, fails to take into account section 473.260, which, as we have seen, indicates that a property interest devolved to the heirs at the time of death, even though that interest was not cognizable for litigation purposes until the determination of heirship.

As we noted, the "partial payment" doctrine is a judicially recognized tolling doctrine based on the notion that by making a partial payment the debtor is both acknowledging the debt and impliedly promising to keep making payments. *Anderson*, 753 S.W.2d at 100. The courts wish to encourage the informal and voluntary resolution of disputes; and, of course, the doctrine of partial payment furthers this purpose by protecting those who are inclined to rely upon the debtor's implied or express promise to keep paying. If a debtor's promise, express or implied, effectively causes a creditor to postpone litigation, the debtor should not thereby be able to entrap a creditor into a statute of limitations bar.

If Tambke made the partial payments as alleged,[5] it is assumed that he made them to the persons to whom he understood payment was due (and, if Tambke regarded their rights as doubtful, he had every right to demand a judicial determination for his protection); and it is further assumed that he made such payments as an implied promise to pay the balance, and thereby hoped to forestall litigation.

The standard of review requires this court read the petition broadly, construe it in favor of the plaintiffs, and not allow dismissal unless it is clear from the face of the petition that the action is barred by the statute of limitations. *D.A.N. Joint Venture, III*, 218 S.W.3d at 458; *Doyle*, 200 S.W.3d at 585. The petition alleges that Tambke made partial payments that arguably would toll the statute of limitations so that the petition is timely. These

---

4.  *See* section 3–101 of the Uniform Probate Code, which contains language similar to section 473.260, and the annotations that follow that section. 8 Uniform Laws Annotated (Master ed.1998).

5.  Tambke has not thus far conceded that the evidence will show that a partial payment was

made in 2004. That issue will remain for the court on remand along with other remaining issues. The petition did not describe the exact terms of the loan. Apparently the loan was a no-interest loan between friends, payable upon demand or within a reasonable time.

payments could be construed as an acknowledgement that the debt was owed to the heirs, and as an implied promise to pay the debt.

We cannot say that it is clear from the face of the pleadings that the action is barred. The dismissal below was based on the pleadings. The dismissal must be reversed, and the case must be remanded to the trial court for further proceedings.

## Conclusion

To the extent that the court believed from the face of the pleadings that the action was barred by either the statute of limitations or by lack of standing, the court erred. The judgment is reversed, and the case is remanded for further proceedings.

All concur.