**CACH, LLC, Respondent,**

v.

**Jon ASKEW, Appellant.**

**No. SC 91780.**

Supreme Court of Missouri, En Banc.

Jan. 17, 2012.

Rehearing Denied March 6, 2012.

Dennis M. Devereaux, James J. Daher, James J. Daher LLC, St. Louis, for Askew.

Karen L. Jones, Evans & Dixon LLC, St. Louis, for CACH.

Gina Chiala, Slough Connealy Irwin & Madden LLC, Kansas City, for amicus curiae National Consumer Law Center.

Clinton P. Woerth, Eric B. Wetzel, Kozeny & McCubbin LC, St. Louis, for amicus curiae National Association of Retail Collection.

Joshua C. Dickinson, Spencer Fane Britt & Browne LLP, Kansas City, for amicus curiae DBA International.

M. Courtney Koger, Michelle A. Fox, Anna M. Wenzel, Kutak Rock LLC, Kansas City, for amicus curiae Commercial Law League of America.

David J. Weimer, Kramer & Frank PC, Kansas City, for amicus curiae Missouri Creditors Bar Inc.

ZEL M. FISCHER, Judge.

Jon Askew appeals a judgment of the circuit court entered in an action brought by CACH, LLC, a debt collector that allegedly had been assigned an outstanding debt owed by Askew. Askew claims that the circuit court erred in entering the judgment because CACH did not properly demonstrate that it had been assigned the debt in question and that the circuit court improperly admitted exhibits based on the business records exception to the hearsay rule. This Court has jurisdiction over this appeal under article V, section 10, of the Missouri Constitution, because it granted transfer after opinion by the court of appeals. Judgment reversed.

## Facts

CACH filed a petition in St. Louis County circuit court seeking to recover $5,936.10 plus interest, the amount it claimed was still owed on a credit card account that Jon Askew opened in 1998 with Providian Bank. Prior to filing its petition, CACH attempted to contact both Askew and his wife to collect the money allegedly owed on the credit card account. After discussing the account with Askew's wife, CACH received two checks drawn on a joint checking account owned by Askew and his wife. The first payment of $500 was made in February 2008. The second payment of $1000 was sent in March 2008. However, Askew successfully stopped payment on the second check shortly after it was sent. In April 2008, Askew sent CACH a letter that disputed the validity of the credit card debt and requested "evidence of this debt ... as well as proof of [CACH's] authority in this matter."

In its petition, CACH claimed it owned the account that had originally been owned by Providian. It averred that Providian was acquired by Washington Mutual, which subsequently assigned Askew's account to Worldwide Asset Purchasing II, LLC. CACH further claimed Worldwide, thereafter, assigned the account to CACH. Askew filed an answer to CACH's petition alleging, among other defenses, that CACH lacked standing to sue.

At trial, CACH offered several exhibits purported to be documents regarding the credit card account. It sought to have those exhibits admitted into evidence by laying a foundation for these documents as business records pursuant to § 490.680, RSMo 2000. CACH's sole witness at trial was Diana Eakins,[1] who is the records custodian for Square Two Financial, which owns CACH.[2] Eakins testified that she had been employed by Square Two Financial since 2009. Eakins admitted that she was not the custodian of records for Washing-

---

1. There is a discrepancy between the trial transcript and the circuit court's judgment regarding how to spell CACH's witness's name. In the transcript, it is spelled "Akens" while in the judgment, it is spelled "Eakins." For purposes of this opinion, this Court will presume that the judgment's spelling is correct.

2. CACH does not have any employees but is a subsidiary of Square Two Financial.

ton Mutual, which had acquired Providian, and that she never had worked for Worldwide. When asked whether she had "any personal knowledge about the business practices of Providian in 1998," Eakins responded that she did not but that she had "bank training with most of the major banks" with which CACH dealt.

Exhibit 7 purported to be a bill of sale transferring several unnamed accounts from Washington Mutual to Worldwide. Exhibit 8 purported to be a bill of sale transferring several unnamed accounts from Worldwide to CACH. Exhibit 9 purported to be a redacted spreadsheet referencing Askew's credit card account. Askew objected to these exhibits on the basis of lack of foundation and hearsay. Askew argued that the exhibits were inadmissible hearsay because Eakins was not qualified to lay a proper foundation for the exhibits as business records. The circuit court overruled Askew's objections and admitted all of these exhibits.

CACH attempted to demonstrate that Washington Mutual assigned Askew's account to Worldwide with Exhibit 7, the bill of sale from Washington Mutual to Worldwide. CACH attempted to demonstrate that Worldwide assigned the account to CACH with Exhibit 8, the bill of sale from Worldwide to CACH. Neither Exhibit 7 nor Exhibit 8 reference Askew's account by either name or number. Instead, both refer to an attached Account Schedule. Eakins testified that Exhibit 9 was the Account Schedule attached to Exhibit 8.[3]

The circuit court entered judgment in favor of CACH and against Askew in the amount of $6,691.91. In a combined findings of fact and conclusions of law, the court determined that "[CACH] purchased and was assigned all rights to collect on Askew's debt" based on Exhibits 7 and 8 (the bills of sale), Exhibit 9 (the attachment showing the bill of sale applied to Askew), and the payments made by Askew to CACH, which the court concluded admitted assignment of the account to CACH.

## CACH's Standing

Askew claims that he was prejudiced by the admission of Exhibit 7[4] because without this exhibit, CACH could not show that it had standing to pursue collection of the credit card debt owed to Providian.

## Standard of Review

■ "Because standing is a question of law, review of the issue on appeal is *de novo*." *Missouri State Medical Ass'n v. State*, 256 S.W.3d 85, 87 (Mo. banc 2008).

## Analysis

■ A party has standing to sue when it has "a justiciable interest in the subject matter of the action." *Garrison v. Schmicke*, 354 Mo. 1185, 193 S.W.2d 614, 615 (1946); *see also Midwestern Health Mgmt., Inc. v. Walker*, 208 S.W.3d 295, 298 (Mo.App.2006) (stating that standing to sue "exists when a party has an interest in the subject matter of the suit that gives it a right to recovery, if validated.") Courts have a duty to determine if a party has standing prior to addressing the substantive issues of the case. *Farmer v. Kinder*, 89 S.W.3d 447, 451 (Mo. banc 2002). For this reason, standing cannot be waived. *Id.*

■ In cases that involve a party attempting to recover on an account owed to

---

3. Though Eakins did not testify that Exhibit 9 was the attachment to Exhibit 7, the circuit court drew this inference in its judgment.

4. Askew also challenges the admission of Exhibits 2, 9, and 11, but these exhibits are not relevant to the resolution of this case.

some other party, "proof of an assignment of the account is essential to a recovery." *Walker*, 208 S.W.3d at 298. The party must show clearly through a valid assignment it is the rightful owner of the account at issue. *C. & W. Asset Acquisition, LLC v. Somogyi*, 136 S.W.3d 134, 140 (Mo.App. 2004). In cases that involve multiple assignments, there must be proof of the validity of assignment every time the rights to collect the debt are transferred. *See Mitchell v. St. Louis Argus Pub. Co.*, 459 S.W.2d 1, 5–6 (Mo.App.1970). In other words, every link in the chain between the party to which the debt was originally owed and the party trying to collect the debt must be proven by competent evidence in order to demonstrate standing. *Walker*, 208 S.W.3d at 298.

In the current case, CACH alleges that the credit card account originated at Providian Bank, which was purchased by Washington Mutual, and that the account was assigned to Worldwide and then assigned to CACH. Therefore, to have standing to collect on Askew's credit card account, CACH must have presented competent evidence of both the assignment of the account between Washington Mutual and Worldwide and the assignment of the account between Worldwide and CACH. At trial, CACH attempted to establish the assignment between Washington Mutual and Worldwide by admitting Exhibit 7 into evidence.

On appeal, Askew challenges the court's admission of Exhibit 7. Askew argues that without the admission of this exhibit, CACH did not demonstrate it had standing to sue. CACH, however, claims Askew waived his right to challenge CACH's standing because of the payment tendered to CACH drawn on the joint account of Askew and his wife. As previously noted, standing cannot be waived. *Farmer*, 89 S.W.3d at 451.

CACH fails to point to any authority that states that a payee admits assignment of a debt simply by making one payment on that debt to the alleged assignee. In its brief, CACH cites *Anderson v. Stanley*, 753 S.W.2d 98 (Mo.App.1988), and *Heidbreder v. Tambke*, 284 S.W.3d 740 (Mo. App.2009), in support of the proposition that "[e]vidence of partial payment implies an agreement to pay the remaining balance." Both cases deal with a partial payment tolling the statute of limitations and not the issue in this case, which is whether a partial payment constitutes the admission of the assignment of a debt. *Anderson v. Stanley* involves an original lender seeking to collect a debt after partial payment and does not address assignment. 753 S.W.2d at 99–100. In *Heidbreder*, a decedent's heirs attempted to collect a debt owed to the decedent. 284 S.W.3d at 742. The appellate court analyzed both whether the heirs had standing and whether the statute of limitations for collection of the debt prevented the heirs from recovering. *Id.* at 742–49. Significantly, the appellate court did not rely on previous payments made by the debtor to the heirs in its analysis of whether the heirs had standing to sue. *Id.* at 742–46. For these reasons, neither case supports CACH's contention that Askew waived his right to challenge the assignment of the accounts by making one payment to CACH before requesting evidence of the debt and proof of CACH's authority to collect the debt.

If this Court finds that CACH did not produce any competent evidence of the assignment between Washington Mutual and Worldwide, then the chain of assignment is broken and CACH did not prove it had standing to sue.

### Analysis of the Admissibility of Exhibit 7

Askew claims the circuit court erred when it admitted into evidence Exhibit 7 because it was inadmissible hearsay. His

objection at trial was that CACH did not lay a proper foundation for Exhibit 7 to qualify it for the business records exception to the rule against the admission of hearsay. Specifically, he objected on the basis that Eakins was not a witness qualified, pursuant to § 490.680, to lay a foundation for Exhibit 7 as a business record.

■ "Before a document may be received in evidence, it must meet a number of foundational requirements including: relevancy, authentication, the best evidence rule, and hearsay." *Hadlock v. Dir. of Revenue*, 860 S.W.2d 335, 337 (Mo. banc 1993). However, "a statute may eliminate one or more of these obstacles with regard to a particular document." *Id.* In the case of business records, § 490.680 allows them to be admitted despite being hearsay if

> the custodian or other qualified witness testifies to [the record's] identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

■ All of the requirements of § 490.680 must be satisfied for a record to be admitted as competent evidence.[5] *State v. Graham*, 641 S.W.2d 102, 106 (Mo. banc 1982). To satisfy these requirements, the records "custodian" or "other qualified witness" has to testify to the record's identity, mode of preparation, and that it was made in the regular course of business, at or near the time of the event that it records. *State v. Sutherland*, 939 S.W.2d 373, 377 (Mo. banc 1997). For that reason, a document that is prepared by one business

cannot qualify for the business records exception merely based on another business's records custodian testifying that it appears in the files of the business that did not create the record. *State v. Anderson*, 413 S.W.2d 161, 165 (Mo.1967); *Zundel v. Bommarito*, 778 S.W.2d 954, 958 (Mo.App. 1989) ("The business records exception to the hearsay rule applies only to documents generated by the business itself. . . . Where the status of the evidence indicates it was prepared elsewhere and was merely received and held in a file but was not made in the ordinary course of the holder's business it is inadmissible and not within a business record exception to the hearsay rule under § 490.680, RSMo 1986.") A custodian of records cannot meet the requirements of § 490.680 by simply serving as "conduit to the flow of records" and not testifying to the mode of preparation of the records in question. *C. & W. Asset*, 136 S.W.3d at 140.

■ The question before the Court in this current case is whether Eakins, the "custodian" of records for Square Two Financial, which owns CACH, was a "qualified witness" to lay the foundation for Exhibit 7 to qualify for the business records exception to the hearsay rule pursuant to § 490.680. *Asset Acceptance v. Lodge*, 325 S.W.3d 525 (Mo.App.2010), is directly on point. In *Lodge*, the legal director of Asset, a debt collection company, testified that Asset had purchased some accounts from a consumer lending company. *Id.* at 527. In support of this assertion, Asset attempted to use the legal director to establish a business records foundation for an assignment and bill of sale from the consumer lending company. *Id.* The legal director testified that "he had worked in

---

5. Section 490.680 applies to both civil and criminal cases. *See State v. Carruth*, 166 S.W.3d 589, 591 (Mo.App.2005). However, in criminal cases, business records that are testimonial in nature are also subject to objection based on the right to confront the witness

pursuant to the Sixth Amendment of the United States Constitution. *Bullcoming v. New Mexico*, —— U.S. ——, 131 S.Ct. 2705, 2712–14, 180 L.Ed.2d 610 (2011) (citing *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 2538–40, 174 L.Ed.2d 314 (2009)).

the credit industry for nearly twenty years at the time of trial, and had worked for Asset for ten years." *Id.* He further testified that "he was familiar with how records were prepared in the industry." Based on the legal director's testimony, the trial court admitted the bill of sale. *Id.* However, the appellate court reversed the judgment on the basis that the legal director was not a "qualified witness" to a lay a proper business record foundation for the bill of sale produced by the consumer lending company because he "could not specifically testify to the mode of the documents preparation or the time of their preparation" given that the documents were not prepared by Asset. *Id.* at 528.

In the current case, Eakins testified that she was neither the records custodian for Washington Mutual nor had she ever worked for Worldwide. In the light most favorable to the admission of the proffered exhibits, she testified that she had "bank training with most of the major banks" with which CACH worked. She did not testify that she had any bank training with Providian, Washington Mutual, or Worldwide. When asked how records were kept at Providian Bank, Washington Mutual, or Worldwide, Eakins testified, over objection based on hearsay, "in the normal and ordinary course of business." To have laid a proper foundation for the admission of Exhibit 7, she must have been a "qualified witness" as that term is used in § 490.680.

█ To be a "qualified witness" who can lay the foundation for a business rec-

ord pursuant to § 490.680, Eakins must have "sufficient knowledge of the business operation and methods of keeping records of the business to give the records probity." *Lodge,* 325 S.W.3d at 528. Eakins' testimony was insufficient to meet this burden. As in *C. & W. Asset,* Eakins lacked sufficient knowledge of when or how Exhibit 7 was prepared. 136 S.W.3d at 140. To allow Eakins' testimony to satisfy § 490.680 would be contrary to the statute because it was insufficient to create the probability of trustworthiness on which the statute relies. *Id.* at 141; *see also Kitchen v. Wilson,* 335 S.W.2d 38, 44 (Mo. 1960).

CACH argues that Eakins' testimony was sufficient because she was in nearly an identical position as the custodian of records in *State v. Carruth,* 166 S.W.3d 589 (Mo.App.2005).[6] In *Carruth,* a records custodian for the Missouri highway patrol laid the business records foundation for fingerprint cards received from the St. Louis police department by testifying about "the standard procedures used by the St. Louis Police Department to collect fingerprints." 166 S.W.3d at 591. In determining that the witness in *Carruth* was qualified to lay the foundation for the fingerprint cards, the appellate court stated: "The qualifying witness must establish that he or she has knowledge of the standard procedures used by a particular jurisdiction to collect fingerprints from arrestees." *Id. Carruth* is distinguishable from

---

6. CACH also argues in its brief that Askew waived his objections to Exhibits 7, 9, and 11 by not raising them in his court of appeals brief. CACH avers that, according to Rule 83.08(b), because Askew did not raise his objections to these exhibits to the court of appeals, he now cannot alter his substitute brief filed with this Court to include this claim. This argument is baseless. Askew's fourth point relied on in his original brief states: "The trial court erred when it permit-

ted the introduction of Exhibits 1, 2, 7, 8, 9, and 11 because these documents did not constitute business records of CACH, in that they were not created by CACH, in the ordinary course of CACH's business at or near the time of the events they purported to record." Furthermore, the court of appeals' opinion indicates that this issue was raised and addressed it. *CACH, LLC v. Askew,* 2011 WL 1119042, at *1 (Mo.App. March 29, 2011).

the current case in that Eakins failed to demonstrate that she had any knowledge of the standard procedures used by either Providian, Washington Mutual, or Worldwide. She only testified that she had knowledge of how "most of the major banks" that CACH did business with kept records; she did not testify as to her personal knowledge regarding the procedures used by any of the particular alleged prior owners of Askew's account.

### Conclusion

Because Eakins was not qualified to lay a business records foundation for Exhibit 7, Exhibit 7 was erroneously admitted into evidence by the circuit court. For this reason, Askew requests that this Court reverse the circuit court's judgment. Reversal of a judgment is only warranted if this Court finds that the error committed by the circuit court materially affected the merits of the action by causing prejudice to the defendant. Rule 84.13(b). Without the admission of Exhibit 7 into evidence, CACH failed to provide any competent evidence of the alleged assignment of Askew's account from Washington Mutual to Worldwide. Without evidence of the validity of this assignment, CACH did not demonstrate it had standing to pursue the claim. Reviewing the record without consideration of Exhibit 7, this Court finds that CACH failed to demonstrate that it had standing to pursue the collection of the money allegedly owed on Askew's credit card account. The judgment is, therefore, reversed.

TEITELMAN, C.J., RUSSELL, BRECKENRIDGE, STITH and PRICE, JJ., and HAYES, Sp.J., concur.

DRAPER, J., not participating.