

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| US BANK, N.A., AS TRUSTEE FOR THE STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2006-BC1, | ) ) ) ) ) ) |
| | WD77576 |
| | OPINION FILED: August 11, 2015 |
| Respondent, | ) ) |
| v. | ) ) |
| RODERICK E. SMITH, ET AL., | ) ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Justine E. Del Muro, Judge

Before Division Four:  Alok Ahuja, Chief Judge, Presiding, Gary D. Witt, Judge and
Kathleen A. Forsyth, Special Judge

Roderick E. Smith ("Smith") appeals the judgment entered by the Circuit Court of

Jackson County in favor of US Bank, N.A., as trustee for the Structured Asset Securities

Corporation Mortgage Loan Trust 2006-BCI ("US Bank"), reforming a deed of trust to

reflect a different legal description of the real property encumbered.  Smith brings two

points on appeal.  First, Smith argues that the court erred in finding that the attachment of

an incorrect legal description to the deed of trust was a mutual mistake and that his refinanced loan encumbered Smith's lot where his home was located. Second, Smith contends that the court erred in finding that US Bank has standing to bring this action against him. We affirm the judgment of the trial court, as modified by this opinion.

## FACTS AND PROCEDURAL HISTORY

On August 28, 2003, Smith purchased a lot with a house on it, as well as the adjoining vacant lot. The lot with the house had a street address of 808 W. 99th Street, Kansas City, Missouri; the vacant lot had no assigned street address. The full legal descriptions of each piece of property are as follows:

[Vacant lot]:
> Lot 5, MOUNTAIN SPRINGS, a subdivision in Kansas City, Jackson County, Missouri, according to the recorded plat thereof.

[Property on which home is located]:
> ALL that part of Lot 6, MOUNTAIN SPRINGS, a subdivision in Kansas City, Jackson County, Missouri, according to the recorded plat thereof, described as follows: Beginning at the Southeast corner of Lot 6; thence West along the South line thereof, a distance of 180 feet; thence North and parallel to the West line of said Lot 6, a distance of 138.5 feet; thence East and parallel to the South line of Lot 6, to a point on the Easterly line thereof; thence Southeasterly and Southerly along said Easterly line to the point of beginning.

(Brackets and identifying information added for ease of analysis)

Smith financed this purchase with a loan that was secured by both lots. On December 5, 2005, Smith sought to refinance the loan in the amount of $312,000.

In connection with the refinanced loan, Smith signed a promissory note (the "Note") payable to the Lender, Finance America LLC ("Finance America"). Smith also executed a deed of trust ("Deed of Trust") securing repayment of the Note. The Deed of

Trust listed the legal description of the property used to secure the Note as "Lot 5, Mountain Springs, a subdivision in Kansas City, Jackson County, Missouri." This legal description was the legal description for the vacant lot and did not include the legal description for the adjoining property, also owned by Smith, where the house was located. However, the property to be encumbered was listed with the street address of Smith's house. The Note provided that "the Lender may transfer the Note and that anyone who takes the Note by transfer and who is entitled to receive payments under the Note is called the Note Holder."

Finance America endorsed the Note in blank. Two weeks later, it was delivered to US Bank's custodian, Deutsche Bank National Trust Company ("Deutsche Bank") for eventual placement into a trust for which US Bank was the trustee.

Seven days after the refinanced loan was closed, a final judgment in the amount of $76,311.62 was entered by the Circuit Court of Jackson County against Smith in favor of Southwestern Bell Yellow Pages, which became a judgment lien on all real property owned by Smith in Jackson County, Missouri. On August 31, 2009, a federal tax lien in the amount of $52,638.91 was recorded in Jackson County against Smith personally and also became a lien on all real property owned by Smith in Jackson County. On May 4, 2010, the Missouri Department of Revenue recorded a state tax lien against Smith in the amount of $7,876.88, resulting in an additional lien against all real property owned by Smith.

At some point, US Bank discovered that the Deed of Trust contained the legal description of the vacant parcel of land rather than the lot with the house on it. On

3

August 2, 2010, US Bank[1] filed a petition seeking reformation of the Deed of Trust to reflect the proper legal description of the lot being encumbered by the loan (Count I), declaratory judgment regarding the priority of lien-holders (Count II), and quiet title in Smith's name and a finding that the title to the lot with the house on it was subject to the Deed of Trust (Count III). The petition named Smith, Southwestern Bell, the IRS and any other person or entity that claimed an interest in the real estate.[2] On April 25, 2012, the trial court filed a Judgment and Order by Consent finding that the federal tax lien was subordinate to US Bank's Deed of Trust. On May 1, 2012, it filed a second Judgment and Order by Consent finding that the Yellow Pages judgment was subordinate to US Bank's Deed of Trust.

In his answer to the petition, Smith alleged that US Bank was not the holder of the note and, therefore, had no standing to bring this action. On October 25, 2012, US Bank filed a motion for partial summary judgment on the sole issue of its standing to bring this

---

[1] US Bank filed the petition as trustee for the Structured Asset Securities Corporation Mortgage Loan Trust # 2006-BC1. This trust holds multiple mortgage loan asset securities that are bundled in groups.

[2] The John Doe defendants identified in the caption of US Bank's petition were never served by publication or otherwise, and no attorney ever entered an appearance on behalf of the John Doe defendants. On April 20, 2012, US Bank filed a renewed motion to file a first amended petition to add the Missouri Department of Revenue as a defendant lien-holder. The civil docket sheet reflects that the motion was granted on the same date, and that a first amended petition was filed on the same date. The first amended judgment deleted reference to the John Doe defendants.

The judgment from which appeal is taken in this case was entered on US Bank's first amended petition. Counsel for US Bank confirmed at oral argument that although its motion for leave to file a first amended petition had been granted, US Bank thereafter elected not to pursue relief against the Missouri Department of Revenue. Consistent with this representation, the record does not indicate that the Missouri Department of Revenue was ever served with process, or that an attorney ever entered an appearance on its behalf.

Technically, the judgment's failure to address a party purportedly added by the first amended petition calls into question the finality of the judgment. However, because the newly added party was never served or otherwise before the court by way of an attorney's entry of appearance, we exercise our discretion to conclude that the judgment resolved all issues as to all parties before the court. *Cf. KAS Enterprises, Inc. v. City of St. Louis*, 121 S.W.3d 262, 263-64 (Mo. App. E.D. 2003) (holding that judgment that did not resolve issues in case as to John Doe defendants was not final for purposes of appeal where summons had been issued to, and an attorney had entered an appearance for, the John Doe defendants.) The better practice to avoid any question of finality would be to reflect in an intended final judgment the dismissal without prejudice of pending claims reflected on the record against named parties over whom the court has not secured personal jurisdiction.

action. Smith responded to the summary judgment motion by alleging, *inter alia*, that US Bank had no standing to file the action because "the deed of trust was assigned to MERS and the note was assigned to Finance America LLC . . . at no point at the original execution of the documents related to this contractual transaction were [both] the note and the deed of trust assigned to either Finance America LLC or to MERS."

The court granted partial summary judgment to US Bank finding that it was, in fact, the proper holder of the Note and, therefore, had standing to enforce the Note. Once standing was resolved, the remaining issue was whether the legal description recorded on the Deed of Trust was the result of a mutual mistake, such that reformation was appropriate.

On May 4, 2014, a one-day bench trial took place. On May 14, 2014, the court issued a judgment in which it found a mutuality of mistake as to the legal description contained in the Deed of Trust. It then ordered that the Deed of Trust be reformed to reflect that the parcel upon which the house was located was intended by the parties to secure the Deed of Trust and that US Bank has the first-priority lien against this parcel. Smith timely appeals. US Bank has a pending motion to dismiss Smith's appeal that we have taken with the case.

## ANALYSIS

In Point I, Smith argues that the court's judgment finding a mutuality of mistake was against the weight of the evidence. In Point II, Smith contends that the court erred in finding that US Bank had standing to enforce the Note. Because we must first address the issue of standing, we take the points in reverse order. *See Farmer v. Kinder*, 89

5

S.W.3d 447, 451 (Mo. banc 2002) (where a party's standing is raised, "courts have a duty to determine the question of their jurisdiction before reaching substantive issues.") (citations omitted).

## POINT II

In Point II, Smith argues that the court erred in finding that US Bank had standing to bring the initial reformation action against him because there was insufficient proof that US Bank was the holder of the Note. Smith asserts that the proper note-holder is Deutsche Bank.

### Standard of Review

"Because standing is a question of law, review of the issue on appeal is *de novo*." *CACH, LLC v. Askew*, 358 S.W.3d 58, 61 (Mo. banc 2012) (citation omitted). The trial court's grant of partial summary judgment finding that US Bank had standing is also reviewed *de novo* because the propriety of summary judgment is purely an issue of law. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Co.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

### Discussion

Smith argues that the court erred in finding that US Bank was the holder of the Note and had standing to bring this cause of action. We disagree.

The trial court found that US Bank had "established that it was the holder of the Note and Deed of Trust executed by Defendant, and, therefore, Plaintiff has standing to bring this action and to enforce the Note and Deed of Trust, and therefore, may proceed with its claims against Defendant."

6

"A party has standing to sue when it has 'a justiciable interest in the subject matter of the action.'" *CACH*, 358 S.W.3d at 61 (citations omitted). Standing "requires that a party seeking relief have a legally cognizable interest in the subject matter and that he has a threatened or actual injury." *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 622 (Mo. App. E.D. 2009) (citation omitted). In other words, US Bank must have an "interest" in the property at issue. *Id.* at 623. To make this determination, we look to the applicable law regarding which entity has the right to enforce the Note. Since the Note is a negotiable instrument, Article 3 of the Uniform Commercial Code ("UCC") is invoked. 38 MOPRAC § 6:17 (2014 ed.). "Missouri has adopted the Uniform Commercial Code, which governs commercial transactions." *U.S. Bank Nat'l Assoc. v. Burns*, 406 S.W.3d 495, 497 (Mo. App. E.D. 2013) (citing §§ 400 *et seq*.).

**I. Standing: Ownership and Possession of the Note**

"Application of the UCC is straightforward regarding [the] question of who is entitled to enforce the Note." *Id.* Section 400.03-301 governs who is entitled to enforce an instrument:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 400.3-309 or 400.3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

The UCC Comment on this section states that this "definition recognizes that enforcement is not limited to holders." *See* MO. ANN. STAT. § 400.3-301 (2015). "It also includes a person in possession of an instrument that is not a holder . . . [and] any other

7

person who under applicable law is a successor to the holder or otherwise acquires the holder's rights." *Id.*

Here, Smith obtained a loan from Finance America and signed the Note in which the lender was identified as Finance America. Smith signed loan documents whereby he agreed that the note could be assigned and he was indebted to the lender *and its successors*. Finance America endorsed the Note in blank, making it enforceable by the bearer or holder of the Note. Because the Note was endorsed in blank, it could be transferred by delivery and possession.[3] § 400.3-205(b). Following the closing of the loan on December 5, 2005, Deutsche Bank, a trust holding company, received the Note and the Deed of Trust.

## II. US Bank's Standing

In April, 2006, however, Deutsche Bank conveyed the Note to US Bank as the trustee for deposit into the Structured Asset Securities Corporation Mortgage Loan Trust 2006-BCI (the "Trust").[4] Smith's Note was one of many notes that were combined to create the corpus of the trust. At that point, Deutsche Bank became an agent for the trustee, US Bank, after Deutsche Bank entered into a custodial agreement whereby it

---

[3] A special endorsement identifies a person to whom the instrument is payable. § 400.3-205(a). An endorsement that is not a special endorsement is a blank endorsement. § 400.3-205(b). A note endorsed in blank is "bearer paper." *Cons. Pub. Water Supply Dist. No. C-1 v. Farmers Bank*, 686 S.W.2d 844, 855 (Mo. App. E.D. 1985). "When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed." § 400.3-205(b).

[4] A trust is not a legal entity capable of suing or being sued. *Pauli v. Spicer*, 445 S.W.3d 667, 673 n.4 (Mo. App. E.D. 2014). Because the trust is not a legal entity, "[t]he trustee is the legal owner of the trust property, in which the beneficiaries have equitable ownership." *Thompson v. Koenen*, 396 S.W.3d 429, 435 (Mo. App. W.D. 2013). Therefore, US Bank as the trustee of the Trust, was the holder of the Note and entitled to enforce it.

8

agreed to hold the Note for US Bank, who was trustee of the Trust.[5] Deutsche Bank became "a nonholder in possession of the instrument who has the rights of a holder." § 400.3-301. Through the principles of agency, US Bank became the holder of the Note because the Note was placed into a trust for which US Bank was the trustee. Deutsche Bank possessed the Note, now assigned to the Trust, as an agent for US Bank. US Bank was the legal holder of the Note (on behalf of the trust) even though the Note was still physically possessed by Deutsche Bank, its agent.

Smith further argues that the Note and the Deed of Trust were not both held by the same entity and therefore US Bank had to also establish that it held the Deed of Trust. However, when the holder of a note assigns or transfers the note, the deed of trust is also transferred. *Fed. Nat. Mortg. Ass'n v. Conover,* 428 S.W.3d 661, 669 (App. W.D. 2014) (citation omitted). "Under Missouri law, because the note and the deed of trust are inseparable, *the holder of a note is entitled to enforce the deed of trust securing that note*." *Id.* (emphasis added). Here, both the Note and the Deed of Trust were possessed by Deutsche Bank as of late January, 2006. Both were held by US Bank once the Note was deposited into the Trust because the Deed of Trust follows the Note. Therefore, US Bank is the holder of the Deed of Trust as the right to enforce the Deed of Trust securing the Note passes with the Note. *Burns*, 406 S.W.3d at 497.

---

[5] Missouri law recognizes that the rules of agency apply to commercial transactions. Section 400.1-103 states that "[u]nless displaced by the particular provisions of this chapter, the principles of law and equity, including . . . principal and agent . . . shall supplement its provisions." As a result, "[e]nforcement can only be by the owner of the indebtedness, or *by the agent of the owner*, in the owner's name." 38 MO PRAC § 6:17 (emphasis added). However, "[a]n agent for the holder must prove the agency relationship and that its principal is the lawful holder of the note." *Id.* Here, US Bank produced its agreement with Deutsche Bank whereby Deutsche Bank agreed to physically possess the Note on behalf of the note holder, US Bank, acting as trustee for the Trust.

9

We agree with the trial court that, as a matter of law, US Bank, as trustee of the Trust, is the holder of the Note and, as holder, it has a legally cognizable interest in the Note and is able to enforce the Note under the terms of the Deed of Trust. Therefore, US Bank has standing to bring this reformation action. Point II is denied.

## POINT I

In Point I, Smith contends that the trial court erred in finding that the legal description set forth in the Deed of Trust was a mutual mistake and that the loan was to encumber Smith's lot where his house was located.

### Standard of Review

"An action for the reformation of a written contract is an equity action." *Lunceford v. Houghtlin*, 326 S.W.3d 53, 61 (Mo. App. W.D. 2010) (citation omitted). As such, it is an action tried by the court. *Id.* (citing *State ex rel. Leonardi v. Sherry,* 137 S.W.3d 462, 465 (Mo. banc 2004)). We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "When determining the sufficiency of the evidence, an appellate court will accept as true the evidence and inferences from the evidence that are favorable to the trial court's decree and disregard all contrary evidence." *Lunceford,* 326 S.W.3d at 61 (citation omitted). "Where, as here, 'a contract is sought to be reformed on the ground of mutual mistake, such a mistake must appear by clear and convincing evidence.'" *Id.* (citation omitted).

10

**Discussion**

US Bank argues that the Note, Deed of Trust and accompanying documents signed by Smith in applying for and closing the loan clearly stated that the loan was to be secured by the real estate upon which his residence was located. It contends that all of the documentation reflects this intent and reflects the mutual agreement of the parties. Smith, however, maintains that he never intended the loan to encumber the real property upon which his residence is located. His position now and before the trial court was that he intended the refinanced loan to encumber only the vacant lot and not the lot where his home is located.

The "accepted rule" is that "[c]ourts of equity will reform written instruments so as to make them speak the real agreements of the parties in cases in which by mistake or misprision of the scrivener the writing failed to do so, and it will exercise such power not only as between the original parties, but as to those claiming under them in privity, such as personal representatives, heirs, assigns, grantees, judgment creditors, or purchasers from them with notice of the facts." *King v. Riley*, 498 S.W.2d 564, 566 (Mo. 1973) (citation omitted). "While reformation is an 'extraordinary equitable remedy,' it is nevertheless available upon a showing that, due to either fraud[6] or mutual mistake, 'the writing fails to accurately set forth the terms of the actual agreement or fails to incorporate the true prior intention of the parties.'" *Lunceford*, 326 S.W.3d at 63 (citing *Elton v. Davis,* 123 S.W.3d 205, 212 (Mo. App. W.D. 2003)). "In seeking reformation, it must be established that a mistake occurred that caused the contract language to differ

---

[6] There is no allegation of fraud in this matter.

11

from what the parties intended in their agreement." *Lunceford*, 326 S.W.3d at 63 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 155 (1981)). "The burden of proof is upon the party seeking reformation to show by clear, cogent and convincing evidence: 1) a preexisting agreement between the parties to describe the tract in accordance with the proposed reformation; 2) the mistake; and 3) the mutuality of the mistake." *Engelland v. LeBeau*, 680 S.W.2d 435, 437 (Mo. App. E.D. 1984) (citation omitted). The only element in dispute in this action is the third element as to the mutuality of the mistake.

In order to show a mistake in an instrument, "it is sufficient that the parties agreed to accomplish a particular object by the instrument to be executed, and that the instrument as executed is insufficient to effectuate their intention." *King,* 498 S.W.2d at 566 (citation omitted). "Reformation may be established by circumstantial evidence provided that the natural and reasonable inferences drawn from it clearly and decidedly prove the alleged mistake." *Everhart v. Westmoreland,* 898 S.W.2d 634, 638 (Mo. App. W.D. 1995) (citation omitted). "It is enough to show that both parties, at the time of the contract, shared a misconception about a basic assumption upon which they based their bargain." *Lunceford*, 326 S.W.3d at 64 (citation omitted).

Here, the trial court enumerated ten paragraphs of factual findings identifying multiple documents that Smith signed acknowledging that he was refinancing the property located at 808 W. 99th Street and that he intended to "occupy the property as his primary residence." All of the paperwork for the refinance reflects that the loan was granting a security interest in the property located at 808 W. 99th Street, Kansas City,

12

Missouri. The documents listed the street address of the home as well as the Jackson County Assessor's Office parcel ID number for the home's lot, Lot 6. Documentation included: 1) Smith's loan application, 2) the Missouri Collateral Protection Insurance Disclosure, 3) an Advance Disclosure Cover Letter, 4) an Occupancy Agreement, 5) a Truth-in-Lending Disclosure Statement, 6) a Notice of Right to Cancel, 7) an Adjustable Rate Rider, 8) the Deed of Trust, 9) the Lender's Closing Instructions, and 10) the HUD Settlement Statement. And although the legal description attached to the Deed of Trust was incorrect, the Deed of Trust itself stated that the property to be encumbered was 808 W. 99th Street, the Assessor's parcel ID number 484401414, which corresponds to Lot 6, the lot with the home on it. It is undisputed that Smith signed or initialed all of these documents. Throughout the documents that Smith signed were provisions wherein he agreed that the real property securing the loan included his primary residence and that he would continue to maintain his primary residence on the real property secured by the loan.[7] Further, the loan that was being refinanced had previously been secured by Lot 6, as well as Lot 5.

The trial court noted that Smith "presented no evidence at trial that the vacant lot, which is what was legally described in a separate attachment to the closing documents,

---

[7] The documents used in the closing of this loan are a textbook case of how NOT to handle any matter involving real property. Most of the documents 1) provide a street address for the property in place of a proper legal description, 2) state "Legal description sent under separate cover," and 3) use the Jackson County Assessor's parcel ID number in place of a legal description. The lack of a full and proper legal description is obvious on the face of the documents and should have raised red flags for any lawyer, banker, title company representative, realtor or a person with even a modicum of knowledge of real estate transactions. A street address does not amount to a legal description of real property, just as the county assessor's parcel ID number has little, if any, meaning as to the proper legal description of a parcel of land. Smith is correct in his portrayal of the sloppiness of the title company involved in this transaction. However, that sloppiness does not support the conclusion that the deed of trust properly reflected the agreement of the parties in this matter.

was in fact the property that was the subject of the loan contemplated by him as borrower and the lender at the time." Smith did not testify as to what his intentions were when he signed the Note. Indeed, in a quiet title action, the burden of proof is on the party seeking quiet title "to prove better title than that of its adversary." *McCord v. Gates*, 159 S.W.3d 369, 374 (Mo. App. W.D. 2004) (party claiming title has burden of proof and "must rely on strength of his own title and not upon the weaknesses in the title of his opponent").

When determining whether a deed of trust should be reformed due to a mutual mistake, the court is free to weigh evidence from both sides as to the parties' intentions. "In seeking reformation, it must be established that a mistake occurred that caused the contract language to differ from what the parties *intended* in their agreement." *Lunceford*, 326 S.W.3d at 63 (emphasis added).

The trial court specifically cited Smith's comments at trial relating to Parkway Title's fault in creating the situation as "tacit evidence" that Smith considered the exclusion of the lot on which his home is located from the legal description to be a mistake. The trial court found that, "at a minimum, [Smith] is acknowledging the existence of a mistake and wants Parkway Title to be held responsible for that mistake." Indeed, in Smith's closing argument to the court, he stated that "there was a mistake made" but then said that it was not a mutual mistake because the creation of the documents fell to one entity -- the title company that prepared the closing documents. "Statements and conduct of the parties that occur after the making of the written instrument may be admissible to establish the facts concerning the issue of a mutual

14

mistake." *Id.* at 67 (citing *Sperrer v. Sperrer,* 573 S.W.2d 693, 695 (Mo. App. E.D. 1978)).

With regard to Smith's argument that it was not a "mutual mistake" but a "unilateral" one because the drafting error fell to one entity and he had no role in it, Missouri law is clear that where the parties to the instrument have reached a meeting of the minds and the instrument intended to express such agreement fails to do so by reason of the mistake of the draftsman, it is immaterial who employed him.[8] *Zahner v. Klump*, 292 S.W.2d 585, 588 (Mo. 1956). Further, "[w]here the scrivener acts for both parties and makes the mistake, then proof of his mistake establishes the mutual mistake, for he was the agent of both parties." *Hoffman v. Kaplan*, 875 S.W.2d 948, 953 (Mo. App. E.D. 1984) (citation omitted) (in preparing deed, scrivener acted as agent for both parties even though he was grantor's attorney and acted under grantor's directions). In other words, the error does not become "unilateral," as opposed to "mutual," just because only one entity drafted the documents and made the drafting error. The requirement for mutuality of mistake is a "preexisting agreement" between the parties. *Engelland*, 680 S.W.2d at 437. Indeed, there was no evidence presented that when Smith entered into this agreement or when he signed the Note, it was his understanding or intent that the Deed of Trust would only be secured by the vacant lot. To the contrary, all documentary and

---

[8] Smith's argument appears to be that he realized at the closing that the title company had the wrong legal description for the property that the parties intended to be secured by the Note, but that this was not his fault because the lender selected the title company that made the error. However, this contention actually supports the bank's argument that the intent of the parties at the time they entered into the transaction was not properly reflected in the final documents and, therefore, that reformation is proper.

testimonial evidence reflects a preexisting agreement that the real estate where Smith's home is located was intended to be the security for the Note by the Deed of Trust.

The court found the "existence of a preexisting agreement between the parties" and that "a mistake was made when the incorrect legal description of the vacant lot was affixed to the loan documents referring to the residence at 808 W. 99th Street, Kansas City, Missouri, as the security interest." It then confirmed the mutuality of mistake such that reformation was proper.

As stated above, we will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court erroneously declares or applies the law. *Murphy,* 536 S.W.2d at 32. Because US Bank presented clear, cogent and convincing evidence that the loan was contemplated by both parties to be secured by the real estate where Smith's home was located we find no error in the trial court's judgment. Point I is denied.

## CONCLUSION

The judgment of the trial court is affirmed as modified by this opinion. The judgment entered by the trial court failed to set forth the full legal description of the property that the Deed of Trust should be reformed to reflect. The correct legal description associated with the Deed of Trust at issue is included herein so that this judgment describes "with reasonable certainty the real estate affected by the decree" and is "alone suitable for recording in real estate records." *See Sharp v. Crawford*, 313 S.W.3d 193, 201 (Mo. App. S.D. 2010) (citations omitted). Therefore, pursuant to Rule 84.14, we "give such judgment as the court ought to give." The Deed of Trust is hereby

16

reformed to reflect the correct legal description for the property securing the Note,[9] to wit:

> ALL that part of Lot 6, MOUNTAIN SPRINGS, a subdivision in Kansas City, Jackson County, Missouri, according to the recorded plat thereof, described as follows:  Beginning at the Southeast corner of Lot 6; thence West along the South line thereof, a distance of 180 feet; thence North and parallel to the West line of said Lot 6, a distance of 138.5 feet; thence East and parallel to the South line of Lot 6, to a point on the Easterly line thereof; thence Southeasterly and Southerly along said Easterly line to the point of beginning.

> US Bank's motion to dismiss Smith's appeal is denied.[10]

_____
Gary D. Witt, Judge

All concur

---

[9] Counsel for US Bank acknowledged at oral argument that only the lot with the house was to be security for the Note and that the vacant lot was not to be included in the reformed Deed of Trust.

[10] Despite briefing deficiencies as enumerated by US Bank in its motion to dismiss this appeal, we were able to discern Smith's arguments and elected to review the points *ex gratia*.