

# SUPREME COURT OF MISSOURI
## en banc

MISSOURI MUNICIPAL LEAGUE,    )
                                   )
                Appellant,       )
                                    )
v.                                          )       No. SC94493
                                      )
STATE OF MISSOURI,           )
                                     )
              Respondent.     )

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Jon E. Beetem, Judge

*Opinion issued August 4, 2015*

The Missouri Municipal League ("MML") filed this lawsuit challenging the validity of section 302.341.2, RSMo Supp. 2013, as enacted in House Bill 103 (2013) ("HB103"). The circuit court denied MML's claims, and MML appeals. But, after this case was briefed, argued, and submitted, the General Assembly passed and the Governor signed Senate Bill 5 (2015) ("SB5"). In addition to enacting various new sections, SB5 repeals the language in section 302.341.2 that formed the basis for MML's claims. Accordingly, MML's claims are moot, and this appeal is dismissed.

## Background

In 1999, the General Assembly passed what is commonly referred to as the "Macks Creek Law." *See* § 302.341.2, RSMo 2000. It prohibited any municipality with a municipal court division from receiving more than 45 percent of its total annual revenue

from fines for traffic violations. Collections in excess of this revenue cap were to be remitted to the director of the department of revenue for distribution to local schools. *Id.* In 2009, this revenue cap was reduced from 45 percent to 35 percent. *See* § 302.341.2, RSMo Supp. 2009.

In 2013, HB103 reduced the revenue cap from 35 percent to 30 percent and required all local governments (including counties) with municipal court divisions to provide an accounting to the state auditor showing the percentage of general operating revenue generated from fines for traffic violations. § 302.341.2, RSMo Supp. 2013. HB103 also enacted language in section 302.341.2 providing that any local government failing to comply with the revenue cap's reporting and remittal requirements would "suffer an immediate loss of jurisdiction of the municipal court of said [local government] on all traffic-related charges until all requirements of [section 302.341.2] are satisfied." *Id.*

Soon after HB103 went into effect, MML filed this lawsuit seeking a declaratory judgment that the version of section 302.341.2 enacted in HB103 is invalid and enjoining future enforcement of its provisions. MML does not challenge the application of the revenue cap to any particular facts, local government, or municipal court divisions. Instead, MML claims that HB103 violated the bill-passage requirements in article III, sections 21 and 23 of the Missouri Constitution. MML also claims that the version of section 302.341.2 enacted in HB103 violates various substantive provisions of the constitution. The circuit court granted the state's motion for judgment on the pleadings

and entered judgment for the state on each of these claims.  MML appeals, and this Court

has jurisdiction.  *See* Mo. Const. art. V, § 3.

## Analysis

This Court is obligated, either upon motion of a party or acting *sua sponte*, to

examine an appeal for mootness because "[m]ootness implicates the justiciability of a

controversy and is a threshold issue to appellate review."  *LeBeau v. Commissioners of*

*Franklin County*, 459 S.W.3d 436, 438 (Mo. banc 2015).

> A cause of action is moot when the question presented for decision seeks a
> judgment upon some matter which, if the judgment was rendered, would
> not have any practical effect upon any then existing controversy.  When an
> event occurs which renders a decision unnecessary, the appeal will be
> dismissed.  And where an enactment supersedes the statute on which the
> litigants rely to define their rights, the appeal no longer represents an actual
> controversy, and the case will be dismissed as moot.

*Humane Society of United States v. State*, 405 S.W.3d 532, 535 (Mo. banc 2013) (quoting

*C.C. Dillon Co. v. City of Eureka*, 12 S.W.3d 322, 325 (Mo. banc 2000)).

As explained in *State ex rel. Reed v. Reardon*, 41 S.W.3d 470 (Mo. banc 2001), an

event rendering a decision unnecessary may occur at any point, including on appeal.

> Even a case vital at inception of the appeal may be mooted by an
> intervenient event which so alters the position of the parties that any
> judgment rendered [merely becomes] a hypothetical opinion.  In deciding
> whether a case is moot, an appellate court is allowed to consider matters
> outside the record.

*Id*. at 473 (alteration in original) (internal citations and quotation marks omitted).

Here, no matter what declaration the Court might make about the validity of

HB103 or the version of section 302.341.2 enacted therein, that declaration would have

no practical effect going forward.  As of August 28, 2015, the rights and obligations of

3

MML's members will not be governed by HB103 and its version of 302.341.2. Instead, those rights and obligations will be governed by the provisions of SB5; provisions that are not – and cannot be – addressed in this case. Accordingly, because all of MML's procedural and substantive claims are moot, this appeal must be dismissed. *See Reardon*, 41 S.W.3d at 473 ("When an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed.").

First, MML's procedural claims are moot because they are based on allegations that the enactment of HB103 violated the constitutional bill-passage requirements in article III, sections 21 and 23. In *LeBeau* and *Humane Society*, however, this Court held that such procedural challenges are moot when the General Assembly later repeals and reenacts the statutory provisions at issue. Because the passage of SB5 in 2015 cures whatever procedural defects there may have been in the enactment of HB103, MML's procedural challenges must be dismissed as moot.

Second, MML's substantive constitutional challenges are moot because the principles applied in *LeBeau* and *Humane Society* are not limited to procedural challenges. MML claims that the version of section 302.341.2 enacted in HB103 violates: (1) separation of powers; (2) this Court's power to make rules governing procedure in the lower courts; (3) local governments' general constitutional right of access to the courts; and (4) certain local governments' specific constitutional right to establish municipal courts to hear and determine ordinance violations. In addition, MML argues – but did not plead – that the language of section 302.341.2 is unduly "vague" and

4

"unworkable" because it does not define the key terms necessary to understand and implement the revenue cap. Finally, MML argues that section 302.341.2 does not establish clear procedures for determining whether a particular local government is in compliance with the revenue cap or allow a local government to seek judicial review of such a decision.

But each of MML's substantive claims focuses on language in section 302.241.2 that is now gone. SB5 repealed – and did not reenact – that language. Moreover, SB5 enacts new provisions aimed at supplying the definitions and procedures that MML insists are lacking in the 2013 version of section 302.341.2. For example, SB5 adds definitions in section 479.350 for terms such as "annual general operating revenue" and "minor traffic violations." SB5 also enacts detailed procedures for determining local governments' compliance with the revenue cap, beginning with the requirement (now found in section 479.360.1) that each local government operating a municipal court division must report its compliance to the state auditor. Then, in section 479.362, SB5 requires the director of the department of revenue (after being notified by the auditor) to determine each local government's compliance. Finally, SB5 adds a provision to section 479.362 allowing local governments to seek judicial review of the director's determinations.

Article V, section 14 of the Missouri Constitution provides that circuit courts have jurisdiction over all civil and criminal cases, including ordinance violations. Section 23 of article V provides that the authority for a local government to operate a municipal court (as a division of the circuit court) must be granted by statute or constitutional

5

provision. Now, under SB5, such authority expressly is conditioned upon the local government's compliance with the revenue cap's reporting and remittal requirements. If a local government's failure to comply with these requirements is confirmed by judicial review (or the time for seeking judicial review of such a failure has lapsed), SB5 enacts a provision in section 479.362 requiring the director of revenue to notify the presiding judge of the circuit court. The presiding judge, in turn, must "immediately order the clerk of the municipal court to certify all pending matters" until the local government's authority to operate a municipal court division is restored.

As a result of SB5, therefore, there simply is nothing left of MML's substantive constitutional claims for this Court to decide. Those claims were based solely on the language in the 2013 version of section 302.341.2 – language that SB5 now has removed from Missouri law. By the same token, MML's arguments that the 2013 version of section 302.341.2 lacked adequate definitions and procedures have been largely undercut by the many new definitions and procedures enacted by SB5. Accordingly, MML's substantive claims – like its procedural claims – are moot, and its appeal must be dismissed. Whatever else may be said about SB5, there can be no doubt that it alters the landscape of the Macks Creek Law to such an extent that there is no longer any reason to analyze MML's claims and no longer any way to fashion meaningful relief for those claims if they were to prevail. If MML wishes to challenge the provisions of SB5, it must initiate a new suit and assert those claims in a new petition.

MML argues that this Court should proceed as though SB5 had not been enacted and issue an opinion addressing the validity of the 2013 version of section 302.341.2 as

6

though this provision were still in effect. Citing *State ex rel. Donnell v. Searcy*, 152 S.W.2d 8, 10 (Mo. banc 1941) (noting that the Court has "unlimited discretion to complete its deliberation of the case and prepare an opinion and enter a final judgment on the merits if it sees fit to do so"), MML argues that an opinion from this Court will offer "direction" to an unspecified number of other cases that MML claims are pending in the lower courts. MML asserts that the outcome of these other cases depends, at least in part, on the validity of the version of section 302.341.2 in effect between August 2013 (when HB103 went into effect) and August 2015 (when SB5 repealed goes into effect), and MML insists that these other cases are not moot because they seek retrospective relief based on past events.

MML's argument is not persuasive. The fact that there may be other cases that are not moot has no bearing on whether this case is moot. Mootness is decided case by case and claim by claim and, for the reasons set forth above, there is no doubt that MML's claims are moot. If this Court were to issue an opinion solely for the purpose of providing "direction" for cases that are not before it (based on claims and facts of which the Court is not aware), the Court would be issuing the very type of advisory opinion that the mootness doctrine is intended to prevent. *Care & Treatment of Schottel v. State*, 159 S.W.3d 836, 841 (Mo. banc 2005). If there are cases with claims about the validity of the 2013 version of section 302.341.2 that are not moot, those claims should be decided in those cases – where the parties most directly interested can be heard – and not here where MML no longer has any legally protectable interest in the resolution of such claims.

7

**Conclusion**

For the reasons set forth above, MML's claims are moot, and its appeal is dismissed.

_____
Paul C. Wilson, Judge

All concur.