

# Missouri Court of Appeals

### Southern District

### en banc

RICHARD SCOTT MERCER,    )
    )
    Movant-Appellant,    )
    )
v.    )    No. SD33779
    )    Filed:  December 29, 2015
STATE OF MISSOURI,    )
    )
    Respondent-Respondent.    )

APPEAL FROM THE CIRCUIT COURT OF DENT COUNTY

Honorable Kelly W. Parker, Circuit Judge

**APPEAL DISMISSED**

Richard Scott Mercer (Movant) was convicted of second-degree statutory rape and incest for events that occurred in February 2007.  In October 2013, Movant filed a motion seeking forensic DNA testing pursuant to § 547.035.[1]  No evidentiary hearing was held on the motion.  An April 21, 2014 docket entry stated:  "Cause called. Movant's Post Conviction Motions Seeking Forensic DNA Testing overruled and denied."  This docket entry was neither signed by the judge nor denominated as a judgment, and the court issued no findings of fact or conclusions of law.  Movant has

---

[1]  All statutory references are to RSMo Cum. Supp. (2006), and all rule references are to Missouri Court Rules (2015).

attempted to appeal from the motion court's docket entry. We dismiss the appeal for lack of a final judgment.

As noted, Movant's motion was brought pursuant to § 547.035. The procedure to be followed in adjudicating such a motion "is governed by the rules of civil procedure insofar as applicable." § 547.035.1. This statute also requires the court to "issue findings of fact and conclusions of law whether or not a hearing is held." § 547.035.8. In relevant part, § 547.037 states that "[a]n appeal may be taken from the court's findings and conclusions as in other civil cases." § 547.037.6. Very similar statutory language in § 536.140.6 has been interpreted to provide a right of appeal pursuant to § 512.020.[2] Subject to exceptions inapplicable here, § 512.020 permits an aggrieved party in a civil case to appeal from "the final judgment in the case." § 512.020(5).

In *Ndegwa v. KSSO, LLC*, 371 S.W.3d 798 (Mo. banc 2012), our Supreme Court stated:

> Prior to reaching the merit of the issues set forth in this case, this Court must determine, *sua sponte*, if there is a final judgment. A final judgment is a prerequisite to appellate review. If the circuit court's judgment was not a final judgment, then the appeal must be dismissed.

*Id*. at 801 (internal citations omitted); *see also Buemi v. Kerckhoff*, 359 S.W.3d 16, 20 (Mo. banc 2011); *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997); *City of St. Louis v. Hughes*, 950 S.W.2d 850, 852 (Mo. banc 1997).

Neither party to this appeal has questioned whether the motion court's docket entry ruling is a final judgment that is appealable pursuant to § 512.020(5). The

---

[2] *See, e.g.*, *Missouri Health Facilities Review Comm. v. Admin. Hearing Comm'n of Missouri*, 700 S.W.2d 445, 449 (Mo. banc 1985); *Underwood v. St. Joseph Bd. of Zoning Adjustment*, 368 S.W.3d 204, 209 (Mo. App. 2012); *Taylor v. Civil Serv. Comm'n of St. Louis Cty., Mo.*, 969 S.W.2d 763, 764 (Mo. App. 1998); *McDowell v. City of Springfield*, 906 S.W.2d 908, 909 (Mo. App. 1995).

2

dissenting opinion argues that this Court need not dismiss this appeal *sua sponte* because *Gibson* and *Hughes* relied upon a jurisdictional rationale that is no longer valid in light of *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009). *See Gibson*, 952 S.W.2d at 244; *Hughes*, 950 S.W.2d at 852. We disagree.

*J.C.W.* dealt with trial court jurisdiction. We question its applicability in determining whether jurisdictional or prudential principles limit an appellate court's ability to address the merits of an appeal. Post-*J.C.W.* cases from our Supreme Court continue to recognize that an appellate court must determine whether it has jurisdiction before deciding an appeal. *See, e.g.*, *Fannie Mae v. Truong*, 361 S.W.3d 400, 403 (Mo. banc 2012) (it is incumbent on the Supreme Court to examine its jurisdiction *sua sponte*); *Spicer v. Donald N. Spicer Revocable Living Trust*, 336 S.W.3d 466, 468 (Mo. banc 2011) (in all appeals, the Supreme Court is required to examine its jurisdiction *sua sponte*).[3] Post-*J.C.W.* cases from our Supreme Court also continue to recognize prudential limitations on an appellate court's authority to reach the merits of an appeal. *See, e.g.*, *Missouri Mun. League v. State*, 465 S.W.3d 904, 906 (Mo. banc 2015) (an appellate court is obligated to examine, *sua sponte*, an appeal for mootness because that threshold issue to appellate review implicates the justiciability of a controversy); *CACH, LLC v. Askew*, 358 S.W.3d 58, 61 (Mo. banc 2012) (an appellate court has a duty to determine if a party has standing prior to addressing the substantive issues of the case,

---

[3] In *Truong*, our Supreme Court held that an appeal lacking a statutory basis confers no authority upon an appellate court except to dismiss the appeal. *Truong*, 361 S.W.3d at 405. The Supreme Court's statement that it had to examine its jurisdiction *sua sponte* suggests the result would have been the same even if the respondent had not raised the issue. *Id*. at 403. In *Spicer*, our Supreme Court held that the absence of a timely notice of appeal deprives an appellate court of jurisdiction and requires the dismissal of the appeal. *Spicer*, 336 S.W.3d at 471-72.

3

and standing cannot be waived). As the opinion in *J.C.W.* wryly noted, "the admirable trait of judicial self-restraint … can be exercised, one hastens to add, without getting all jurisdictional about it." *J.C.W.*, 275 S.W.3d at 251.

Neither *Ndegwa* nor *Buemi* explicitly state whether the prerequisite requirement of a final judgment is based upon jurisdictional or prudential concerns. *See Ndegwa*, 371 S.W.3d at 801; *Buemi*, 359 S.W.3d at 20. Regardless of the underlying rationale, our Supreme Court continues to apply the rule that an appellate court must dismiss an appeal *sua sponte* for lack of a final judgment. As our Supreme Court noted in *McNeal v. McNeal-Sydnor*, 472 S.W.3d 194 (Mo. banc 2015):

> The circuit court initially entered an order dismissing Mr. McNeal's petition. Mr. McNeal filed his notice of appeal directly with this Court. This Court issued an order to Mr. McNeal ordering him to show cause as to why his appeal should not be dismissed for lack of a final judgment. The circuit court then entered an amended judgment of dismissal.

*Id*. at 194-95. It makes no practical difference because this Court is constitutionally bound to follow the last controlling decision of our Supreme Court. MO. CONST. art. V, § 2; *State v. Spencer*, 307 S.W.3d 203, 205 (Mo. App. 2010). Therefore, we must dismiss this appeal unless we decide that the motion court's docket entry constitutes a final judgment.

In making that decision, we are required to read § 512.020(5) in conjunction with Rule 74.01(a). *See Spiece v. Garland*, 197 S.W.3d 594, 595-96 (Mo. banc 2006); *Hughes*, 950 S.W.2d at 852-53. Rule 74.01(a) states:

> **(a) Included Matters**. "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment is rendered when entered. A judgment is entered when a writing signed by the judge and denominated "judgment" or "decree" is filed. The judgment may be a separate document or entry on the docket sheet of the case. A docket sheet entry complying with these requirements is a judgment unless the

4

> docket sheet entry indicates that the court will enter the judgment in a separate document. The separate document shall be the judgment when entered.

The provisions of Rule 74.01(a) define and clarify what constitutes a judgment. *Hughes*, 950 S.W.2d at 853. Pursuant to rulemaking authority granted by art. V, § 5 of the Missouri Constitution, our Supreme Court revised this subpart of the rule for the following reason:

> The requirement that a trial court must "denominate" its final ruling as a "judgment" is not a mere formality. It establishes a "bright line" test as to when a writing is a judgment. The rule is an attempt to assist the litigants and the appellate courts by clearly distinguishing between when orders and rulings of the trial court are intended to be final and appealable and when the trial court seeks to retain jurisdiction over the issue.

*Hughes*, 950 S.W.2d at 853; *see also* *Dunivan v. State*, 466 S.W.3d 514, 517-18 (Mo. banc 2015) (reaffirming this principle and citing *Hughes* as support). Thus, a decree or order is not appealable pursuant to § 512.020 until a writing, signed by the judge and denominated as a judgment or decree, is filed. *See* Rule 74.01(a); *Spiece*, 197 S.W.3d at 595-96.

The only remaining issue is whether Rule 74.01(a) applies to this civil post-conviction proceeding which "is governed by the rules of civil procedure insofar as applicable." § 547.035.1. To make that decision, the essential inquiry is whether Rule 74.01(a) conflicts with, enhances or is neutral to the purposes of § 547.035. *See* *Atchison v. State*, 420 S.W.3d 559, 561 (Mo. App. 2013); *In re C.A.D.*, 995 S.W.2d 21, 27 (Mo. App. 1999). If the rule enhances those purposes or is of neutral consequence, it applies. *Atchison*, 420 S.W.3d at 561. In our view, the denomination and signature requirements in Rule 74.01(a) enhance the purpose of § 547.035 and must be applied.

First, application of Rule 74.01(a) provides a bright-line test for appellate courts and litigants to know when a § 547.035 ruling is appealable.[4]  Denomination and signature by the motion court demonstrates that it has fully adjudicated the matter.

Second, § 547.035.8 requires a motion court to issue findings of fact and conclusions of law.  That did not occur below.  The application of the Rule 74.01 assists appellate courts and litigants in determining when a Rule 78.07(c) motion to amend the judgment must be filed in order to be timely and helps avoid an inadvertent waiver of the statutory requirement for findings of fact and conclusions of law.[5]

Because the motion court's docket entry was neither signed by the judge nor denominated as a judgment or decree as required by Rule 74.01(a), the docket entry is not a final judgment that is appealable pursuant to § 512.020(5).  Accordingly, the appeal is dismissed for lack of a final judgment.  *See Ndegwa*, 371 S.W.3d at 802; *Buemi*, 359 S.W.3d at 25.


JEFFREY W. BATES, J. – OPINION AUTHOR

WILLIAM W. FRANCIS, JR., J. – CONCURS

MARY W. SHEFFIELD, C.J. – CONCURS

---

[4]  An order sustaining or overruling a Rule 29.15 or Rule 24.035 motion is expressly "deemed a final judgment for purposes of appeal by the movant or the state." Rule 29.15(k); Rule 24.035(k).  As a result, it is not necessary that the order be denominated a "judgment" in order to be appealable. *Jendro v. State*, 453 S.W.3d 333, 337 (Mo. App. 2014).  There is no similar language in § 547.035 or § 547.037.

[5]  Rule 78.07(c) requires that "[i]n all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." *Id.*  Rule 78.04 requires such a motion to be filed not later than 30 days after the entry of judgment.

DANIEL E. SCOTT, J. – CONCURS IN PRINCIPAL OPINION AND BY SEPARATE OPINION

DON E. BURRELL, J. – CONCURS IN PRINCIPAL OPINION, CONCURS IN SEPARATE CONCURRING OPINION OF J. SCOTT AND CONCURS BY SEPARATE OPINION

NANCY STEFFEN RAHMEYER, J. – DISSENTS BY SEPARATE OPINION

GARY W. LYNCH, J. – CONCURS IN DISSENTING OPINION



# Missouri Court of Appeals

## Southern District

### en banc

RICHARD SCOTT MERCER,              )
                                   )
    Movant-Appellant,              )
                                   )
v.                                 )      No. SD33779
                                   )
STATE OF MISSOURI,                 )
                                   )
    Respondent-Respondent.         )

## CONCURRING OPINION

I credit the dissent for formally proving, as seemed to follow from **J.C.W**.,[1] that this Rule 74.01(a) violation does not rob us of appellate jurisdiction.

Still, with exceptions inapplicable here, controlling authority requires that we "determine, *sua sponte*, if there is a final judgment," which "is a prerequisite to appellate review." **Ndegwa v. KSSO, LLC**, 371 S.W.3d 798, 801 (Mo. banc 2012). I agree that Rule 74.01(a) applies to this case, which means the docket entry was not a final judgment. "If the circuit court's judgment was not a final judgment, then the appeal must be dismissed." **Ndegwa**, 371 S.W.3d at 801.

---

[1] **J.C.W. ex rel. Webb v. Wyciskalla**, 275 S.W.3d 249 (Mo. banc 2009).

In ***Hughes***,[2] our supreme court explained why. Faced with problems, the court determined in 1995 to create

> a "bright line" test as to when a writing is a judgment.... [in] an attempt to assist the litigants and the appellate courts by clearly distinguishing between when orders and rulings of the trial court are intended to be final and appealable and when the trial court seeks to retain jurisdiction over the issue.

950 S.W.2d at 853.  The result was amended Rule 74.01(a), ***id***., and a requirement that appellate courts check for compliance and dismiss appeals for noncompliance. ***Ndegwa***, 371 S.W.3d at 801. Respect for that policy decision and our high court's authority to make it, more than slavish adherence to *stare decisis*, demands that we stay the course until that court, not this one, decides to change direction.

DANIEL E. SCOTT, J. – SEPARATE OPINION AUTHOR

---

[2] ***City of St. Louis v. Hughes***, 950 S.W.2d 850 (Mo. banc 1997).


RICHARD SCOTT MERCER, )
)
    Movant-Appellant, )
)
vs. )    No. SD33779
)
STATE OF MISSOURI, )    **Filed: December 29, 2015**
)
    Respondent-Respondent. )

## CONCURRING OPINION

I concur in the principal opinion and in the separate opinion of Judge Scott. I also find much to admire in the dissenting opinion, and if our high court had written ***Hughes***[1] after it wrote ***J.C.W.***,[2] I doubt that the concluding word of the analysis in ***Hughes*** would have been "jurisdiction."[3] Nonetheless, the question of appellate court "jurisdiction" was not at issue in ***J.C.W.***, and ***Hughes*** has not been explicitly overruled. As a result, I also cannot join the dissent for the reasons stated by our supreme court in ***State v. Honeycutt***, 421 S.W.3d 410, 422 (Mo. banc 2013):

> Generally, this Court presumes, absent a contrary showing, that an opinion of this Court has not been overruled *sub silentio*. *See Badahman v. Catering St. Louis*, 395 S.W.3d 29, 37 n. 10 (Mo. banc 2013). *Sub silentio* is defined as "without notice being taken or without making a particular point of the matter in question." *Webster's Third New International Dictionary* 2279 (1976). "If the majority chooses to overrule [a case] it is far preferable to do so by the front door of reason rather than the amorphous back door of *sub silentio*." *Keller v. Marion Cty. Ambulance Distr.*, 820 S.W.2d 301, 308 (Mo. banc 1991) (Holstein, J., dissenting). This presumption can be traced, at least in

---

[1] *City of St. Louis v. Hughes*, 950 S.W.2d 850 (Mo. banc 1997).
[2] *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009).
[3] 950 S.W.2d at 853.

part, to the doctrine of *stare decisis*. "The doctrine of *stare decisis*—to adhere to decided cases—promotes stability in the law by encouraging courts to adhere to precedents." *Med. Shoppe Int'l, Inc. v. Dir. of Revenue*, 156 S.W.3d 333, 334–35 (Mo. banc 2005). Under the doctrine of *stare decisis*, decisions of this Court should not be lightly overruled, especially when "the opinion has remained unchanged for many years." *Sw. Bell Yellow Pages, Inc. v. Dir. Of Revenue*, 94 S.W.3d 388, 391 (Mo. banc 2002).

Importantly, "[t]he maxim of stare decisis applies only to decisions on points arising and decided in causes" and does not extend to mere implications from issues actually decided. *Broadwater v. Wabash R. Co.*, 212 Mo. 437, 110 S.W. 1084, 1086 (1908). To assert that a decision has been overruled *sub silentio* is the same as to assert that the decision has been overruled by implication. This Court's presumption against *sub silentio* holdings, therefore, is based not only on the general preference that precedent be adhered to and decisions be expressly overruled, but also because the implicit nature of a *sub silentio* holding has no *stare decisis* effect and is not binding on future decisions of this Court.

DON E. BURRELL, J. – SEPARATE OPINION AUTHOR



# Missouri Court of Appeals

## Southern District

### en banc

RICHARD SCOTT MERCER,    )
    )
    Movant-Appellant,    )
    )
vs.    )    No. SD33779
    )
STATE OF MISSOURI,    )    **Filed:  December 29, 2015**
    )
    Respondent-Respondent.    )

### APPEAL FROM THE CIRCUIT COURT OF DENT COUNTY

Honorable Kelly W. Parker, Circuit Judge

## <u>DISSENT</u>

I must respectfully dissent from the dismissal of the appeal.  First, I note that a very narrow issue is presented to us.  The trial court here entered a docket entry denying the motion for DNA testing.  This docket entry does not comply with the requirements of Rule 74.01(a)[1] to be signed by the judge and designated as a "judgment" and, thus, cannot be considered to be a

---

[1] All rule references are to Missouri Court Rules (2015).

*judgment* as defined by that rule.[2]  The parties, however, have not raised any issue whether Rule 74.01 applies or requested any relief for non-compliance with that rule or section 512.020. Therefore, our only interest is whether non-compliance with Rule 74.01(a), and, thus, section 512.020, deprives us of appellate jurisdiction to review this appeal.  While I agree with the majority opinion that we have a duty to determine our "jurisdiction," based upon the analysis employed by our Supreme Court in *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009), decided after *City of St. Louis v. Hughes*, 950 S.W.2d 850, 853 (Mo. banc 1997), I believe that this Court does have jurisdiction to determine the appeal.  I believe the omission of the judge's signature and failure to denominate the order as a "judgment," are simply errors that this Court may address, but is not required to address unless raised by the parties, in deciding the appeal.

JURISDICTION ANALYSIS

To commence, then, "this Court, *sua sponte,* must determine its own jurisdiction of this appeal."  *Comm. for Educ. Equal. v. State*, 878 S.W.2d 446, 450 (Mo. banc 1994).  "To do otherwise is to erode the very foundation of the rule of law."  *Id.*  The application of this foundational principle is not in dispute.

Section 547.035, under which this motion was brought, provides that "[t]he procedure to be followed for such motions is governed by the rules of civil procedure insofar as applicable."

---

[2] The majority opinion also faults the motion court's docket entry for omitting findings of facts and conclusions of law as required by section 547.035.8.  It fails, however, to provide any analysis as to whether, and if so how, this omission either countermands our constitutionally granted appellate jurisdiction to hear this appeal, *see infra*, or undermines the existence of a final judgment, *see, e.g.*, *Green v. State*, No. SD33574, 2015 WL 5892915 (Mo.App. S.D. October 8, 2015), *cause ordered transferred* on December 22, 2015 (appeal dismissed for lack of a final judgment because motion court did not enter rule-required findings of fact and conclusions of law on all asserted claims).  The "inadvertent waiver of the statutory requirement for findings of fact and conclusions of law" concern mentioned in the majority opinion is easily addressed by an appellant simply pursuing the entry of a final judgment, as contemplated by court rules and section 512.020, before filing his or her notice of appeal.  Here, Movant chose to invoke our constitutionally granted appellate jurisdiction, *see infra*, when he filed his notice of appeal.  If Movant's choice was premature and thereby substantially impaired or limited his chances of success on appeal, any efforts on our part to *sua sponte* save him from his own folly in doing so thrusts us into the role of his advocate rather than an impartial decision maker as required by our role in maintaining the rule of law.

2

Section 547.035.1.  Section 512.020 gives a statutory right to appeal to "[a]ny party to a suit aggrieved by any *judgment* of any trial court in any civil cause[.]"  Section 512.020 (emphasis added).  Rule 74.01(a) states, in part, "[a] judgment is entered when a writing signed by the judge and denominated 'judgment'. . . is filed."  Because the docket entry here does not meet the Rule 74.01 requirements to be considered a judgment, there is no section 512.020 statutory right to appeal it.  These legal errors, however, even though once considered an integral part of our required jurisdictional analysis in every case, do not deprive us of our constitutionally-granted jurisdiction to hear this appeal.

A review of the cases establishing the "jurisdiction" analysis is helpful.  In ***Hughes***, our Supreme Court established a "bright line" test to determine when a writing is a judgment from which an appeal lies.  That determination was whether the order was "denominated" a judgment, as required by Rule 74.01(a).  ***Hughes***, 950 S.W.2d at 853.  In ***Hughes***, the central premise of the opinion was that the right of appeal is statutory, with the applicable statutory provisions to be section 512.020.  ***Id.*** at 852.  Section 512.020, RSMo. Cum.Supp. 2004, now provides:

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any:
> (1) Order granting a new trial;
> (2) Order refusing to revoke, modify, or change an interlocutory order appointing a receiver or receivers, or dissolving an injunction;
> (3) Order granting or denying class action certification provided that:
> (a) The court of appeals, in its discretion, permits such an appeal; and
> (b) An appeal of such an order shall not stay proceedings in the court unless the judge or the court of appeals so orders;
> (4) Interlocutory judgments in actions of partition which determine the rights of the parties; or
> (5) Final judgment in the case or from any special order after final judgment in the cause; but a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case.

3

"Absent one of the exceptions expressly set out in [section 512.020], 'a prerequisite to appellate review is that there be a final judgment.'" *Hughes*, 950 S.W.2d at 852.

The *Hughes* court noted, "If the order of the trial court was not a final judgment, this Court lacks *jurisdiction* and the appeal must be dismissed." *Id.* (emphasis added). The *Hughes* court further stated that "[t]he legislature has defined a 'judgment' as 'the final determination of the right of the parties in an action.'" *Id.* at 853. The Court reasoned, "The rule is an attempt to assist the litigants and the appellate courts by clearly distinguishing between when orders and rulings of the trial court are intended to be final and appealable and when the trial court seeks to retain *jurisdiction* over the issue." *Id.* (emphasis added). Holding that "we are without jurisdiction[,]" the *Hughes* court dismissed the appeal. *Id.*

After *Hughes*, however, our Supreme Court decided "to bring down to earth and clarify the meaning of the magical word 'jurisdiction'"[3] *J.C.W.*, 275 S.W.3d at 251. Initially, the Court explained that subject matter jurisdiction of the circuit court is governed by the Missouri Constitution. *Id.* at 252.

> Missouri courts recognize two kinds of jurisdiction: subject matter jurisdiction and personal jurisdiction. These two kinds of jurisdiction—and there are only two for the circuit courts—are based upon constitutional principles. Personal

_____

[3]Judge Wolff described the magical qualities of "jurisdiction" as follows:

> The word has magic because it can make judgments disappear, as in: "The judgment is a nullity because the court lacked jurisdiction." The word has magic because it makes judges fearful of entering the Land of No Jurisdiction. A lawyer, accordingly, employs the magic word in hopes of curbing the judicial beast from entering the Land of No Jurisdiction, where the defense of the case might be devoured on its merits. In other cases, perhaps, judges likewise may use the magical word to display the admirable trait of judicial self-restraint in order to avoid deciding the merits. (This admirable trait can be exercised, one hastens to add, without getting all jurisdictional about it.) A word with such magic would seem, of course, to be irresistible to those who would seek legislation to block the courthouse door to litigants of unpopular character and claims of disfavored origin.
> To call a concept "jurisdictional" is to elevate its importance. The problem with a word with such magic is, sadly, that it will be over used, as it is in cases such as the present case.

*J.C.W.*, 275 S.W.3d at 251-52.

4

jurisdiction is, for the most part, a matter of federal constitutional law.[] Subject matter jurisdiction is governed by article V of the Missouri Constitution.

*Id.*

"[T]he subject matter jurisdiction of Missouri's courts is governed directly by the

[S]tate's constitution." *Id.* at 253. The Court held:

> Article V, section 14 sets forth the subject matter jurisdiction of Missouri's circuit courts in plenary terms, providing that '[t]he circuit courts shall have original jurisdiction over *all* cases and matters, civil and criminal. Such courts may issue and determine original remedial writs and shall sit at times and places within the circuit as determined by the circuit court.

*Id.* at 253-54 (emphasis added in *J.C.W.*). Our Supreme Court eschewed the notion that a statute

could impinge upon this constitutional grant of jurisdiction by stating:

> Elevating statutory restrictions to matters of "jurisdictional competence" erodes the constitutional boundary established by article V of the Missouri Constitution, as well as the separation of powers doctrine, and robs the concept of subject matter jurisdiction of the clarity that the constitution provides. If "jurisdictional competence" is recognized as a distinct concept under which a statute can restrict subject matter jurisdiction, the term creates a temptation for litigants to label every statutory restriction on claims for relief as a matter of jurisdictional competence. Accordingly, having fully considered the potential ill effects of recognizing a separate jurisdictional basis called jurisdictional competence, the courts of this state should confine their discussions of circuit court jurisdiction to constitutionally recognized doctrines of personal and subject matter jurisdiction; there is no third category of jurisdiction called "jurisdictional competence."

*Id.* at 254.

Like subject matter jurisdiction of the circuit courts, as addressed in *J.C.W.*, appellate

jurisdiction of Missouri's appellate courts is governed directly by the State's constitution.

Article V, Section 3 of the Missouri Constitution provides:

> The supreme court shall have exclusive appellate jurisdiction in all cases involving the validity of a treaty or statute of the United States, or of a statute or provision of the constitution of this state, the construction of the revenue laws of this state, the title to any state office and in all cases where the punishment imposed is death. <u>The court of appeals shall have general appellate jurisdiction in *all* cases except those within the exclusive jurisdiction of the supreme court.</u>

5

(Emphasis added).  Article V, Section 5 provides:

> The supreme court may establish rules relating to practice, procedure and pleading for all courts and administrative tribunals, which shall have the force and effect of law. The rules shall not change substantive rights, or the law relating to evidence, the oral examination of witnesses, juries, the right of trial by jury, or the right of appeal. The court shall publish the rules and fix the day on which they take effect, but no rule shall take effect before six months after its publication. Any rule may be annulled or amended in whole or in part by a law limited to the purpose.[4]

Article V, Section 11 provides:

> In all proceedings reviewable on appeal by the supreme court or the court of appeals, appeals shall go directly to the court or district having jurisdiction, <u>but want of jurisdiction shall not be ground for dismissal</u>, and the proceeding shall be transferred to the appellate court having jurisdiction. An original action filed in a court lacking jurisdiction or venue shall be transferred to the appropriate court.

(Emphasis added).  Article V, Section 13 provides:

> <u>The court of appeals shall be organized into separate districts, the number, not less than three, geographical boundaries, and *territorial jurisdiction* of which shall be prescribed by law. Each district of the court of appeals shall be composed of such number of judges, not less than three, as may be provided by law.</u>

(Emphasis added).

Our State's constitution is clear:

- The supreme court has exclusive appellate jurisdiction in all cases  involving:

    o      the validity of a treaty or statute of the United States, or of a statute or provision of the constitution of this state,

    o      the construction of the revenue laws of this state,

---

[4] In ***Dorris v. State***, 360 S.W.3d 260 (Mo. banc 2012), the Supreme Court held that courts have a duty to *sua sponte* enforce the mandatory time limits and the resulting complete waiver in the post-conviction rules—Rules 24.035 and 29.15. ***Id.*** at 268.  The ***Dorris*** court, however, expressly avoided a *jurisdictional* basis for this requirement by citing and quoting ***J.C.W.*** for the proposition that "[w]hen a statute, or court rule, speaks in jurisdictional terms, or can be read in such terms, it is proper to read it 'as merely setting . . . limits on remedies or elements of claims for relief that courts *may* grant[,]'" ***id.*** at 265 (citing and quoting ***J.C.W.***, 275 S.W.3d at 255)(emphasis added), and finding that it had constitutional jurisdiction to hear the appeal, ***Dorris,*** 360 S.W.3d at 265.  Rather, it found this requirement rooted in the "complete waiver" language in Rules 24.035 and 29.15, which "is different from the language of other rules or statutes that set time limits." ***Id.*** at 266 and 267.  No such language or similar language is found in Rule 74.01 or sections 512.020, 547.035 or 547.037.

6

o　　the title to any state office and

o　　in all cases where the punishment imposed is death.

•　　The court of appeals has general appellate jurisdiction in *all* cases except those within the exclusive jurisdiction of the supreme court.

•　　Each district of the court of appeals has territorial jurisdiction as　prescribed by law.

•　　If any court or district does not have appellate or territorial jurisdiction,　the case is to be transferred to the court or district having such jurisdiction.

•　　*No* case should be dismissed for "want of jurisdiction."

I acknowledge that the right to appeal is purely statutory, ***Riverside-Quindaro Bend Levee Dist. v. Intercontinental Eng'g Mfg. Corp.***, 121 S.W.3d 531, 533 (Mo. banc 2003), and that the Missouri Constitution assigns to the legislature the authority to set the number of districts of the court of appeals and the geographical boundaries of those districts for territorial jurisdiction purposes.  But, for the same reasons our Supreme Court in ***J.C.W.*** refused to elevate statutory restrictions to erode "the constitutional boundary established by article V of the Missouri Constitution" giving subject matter jurisdiction to Missouri's circuit courts "over *all* cases and matters, civil and criminal", ***J.C.W.***, 275 S.W.3d at 253 (emphasis added), I likewise refuse to elevate section 512.020, as implemented by Rule 74.01(a), to vary or change the clear plenary nature in which the Missouri Constitution assigns appellate jurisdiction to either the supreme court or the court of appeals in *all* cases.  To the extent that ***Hughes*** and other pre-

7

***J.C.W.*** cases do so under the guise of the word "jurisdiction,"[5] they are inconsistent with ***J.C.W.*** and its effort to "bring down to earth and clarify the meaning" of that word.

Just as the Missouri Constitution made "simple the task of determining jurisdiction" for circuit courts in ***J.C.W.***, it makes simple our task of determining appellate jurisdiction in the case at hand. The subject matter of this case is not within the exclusive appellate jurisdiction of the Supreme Court and, therefore by constitutional definition, falls within the court of appeals' general appellate jurisdiction. The case arises from the circuit court of Dent County, Missouri, which is within the territorial jurisdiction of the southern district of the court of appeals, as prescribed by law. *See* section 477.060 (Dent County is within territorial jurisdiction of the southern district of court of appeals). In accordance with the Missouri Constitution, this district of the court of appeals has appellate jurisdiction over this appeal.

The majority opinion cites to several post-***J.C.W.*** cases for the proposition that

---

[5] *See, e.g.*, ***Smith v. State***, 63 S.W.3d 218, 219 (Mo. banc 2001) (appeal dismissed because appellate courts lack jurisdiction over attempted appeals from orders that fail to dispose of all claims as to all parties); ***Gibson v. Brewer***, 952 S.W.2d 239, 244 (Mo. banc 1997) ("If the trial court's judgments are not final, this Court lacks jurisdiction and the appeals must be dismissed."); ***Comm. for Educ. Equal. v. State***, 878 S.W.2d 446, 455 (Mo. banc 1994) (appeal dismissed for lack of jurisdiction because of no final judgment). The holdings in these and other pre-***J.C.W.*** cases, including ***Hughes***, dismissing appeals for lack of a final judgment, were based upon the major premise that appellate courts are required to *sua sponte* determine their jurisdiction to hear an appeal, the minor premise that the lack of a final judgment is jurisdictional, and the conclusion drawn from applying the minor premise to the major premise that an appellate court is therefore required to *sua sponte* determine whether there is a final judgment in order to hear an appeal. ***J.C.W.***'s constitutional framework for determining jurisdiction, however, undermines the validity of the minor premise—lack of a final judgment is jurisdictional—because the final judgment requirement is a creation of statute and court rule and is not mentioned in or required by the constitutional provisions granting appellate jurisdiction, *see supra*.

8

***J.C.W.*** did not change the landscape regarding the ***Hughes*** bright line test.[6]  First, in ***Ndegwa v. KSSO, LLC***, 371 S.W.3d 798, 801-02 (Mo. banc 2012), although the court did make the statement that it was the duty of the court to determine, *sua sponte,* whether there was a final judgment,[7] the issue in the case was whether a distinct judicial unit allowed the trial court to certify the "judgment" as final.  The Supreme Court determined that the circuit court's order "did not resolve a single, distinct judicial unit" and therefore was neither a final nor appealable judgment.  ***Id.*** at 802.  It did not raise any issue regarding Rule 74.01(a) required signature on a judgment or denomination of "judgment."

In ***Fannie Mae v. Truong***, 361 S.W.3d 400 (Mo. banc 2012), the issue of whether there was a final appealable judgment was raised by the parties in its point relied on.  ***Id.*** at 403.  That fact distinguishes it from the case here where neither party raises the issue.[8]  Moreover, in ***Truong***, the associate circuit division had ruled against Truong in a summary judgment.  ***Id.*** Rather than seek a right to a trial de novo in the circuit court, Truong directly appealed to the

---

[6] I have no quarrel with ***Hughes'*** bright line test and its usefulness as it relates to the existence of a final judgment. ***J.C.W.***'s view of jurisdiction, however, countermands ***Hughes'*** linkage of its test to our appellate jurisdiction thereby triggering a required *sua sponte* inquiry.  Just as the ***Hughes'*** bright line test is useful and helpful, however, the appellate courts also need a bright line as to their *mandated* areas of *sua sponte* inquiry in each case. That line currently has been drawn to include a jurisdictional inquiry in every case, *see **Comm. for Educ. Equal.,*** 878 S.W.2d at 450, and the "complete waiver" inquiry in Rule 24.035 or 29.15 post-conviction cases, *see* note 3.  The inclusion of any other issues, rules or statutes as falling within that *mandated* line should be explicit and include a careful consideration of the nature and role of appellate courts in general, their historical standards of review, and their limited resources as compared to the vast universe of potential issues, rules, and statutes.

In addition, had the State raised the issues here that the trial court had not signed the order or designated the order as a judgment, then we might have an additional analysis:  a discussion of whether the Rule 74.01(a) applies to post-conviction requests for DNA testing.

[7] The ***Ndegwa*** court cited ***Gibson***, *see* note 5, as its sole support for this statement.  ***Gibson*** is a pre-***J.C.W.*** case that expressly held that "[i]f the trial court's judgments are not final, this Court *lacks jurisdiction* and the appeals must be dismissed." ***Gibson***, 952 S.W.2d at 244.  Similarly, as cited in the majority opinion, ***Buemi v. Kerckhoff***, 359 S.W.3d 16, 20 (Mo. banc 2011) also relies upon ***Gibson*** as support and ***Dunivan v. State***, 466 S.W.3d 514, 517-18 (Mo. banc 2015) relies upon ***Hughes*** as support.  Neither the majority opinion nor any post-***J.C.W.*** case that I can find, however, offers any explanation or analysis as to how the pre-***J.C.W.*** jurisdictional analysis, as relied upon by all, has magically morphed into a post-***J.C.W.*** non-jurisdictional requirement to *sua sponte* embark upon a quest in every case in search of the apparently elusive final judgment regardless of whether such an adventure furthers or hinders the orderly administration of justice.

[8] For the same reason, and in addition to being pre-***J.C.W.***, ***Spiece v. Garland***, 197 S.W.3d 594 (Mo. banc 2006), cited in the majority opinion, has no application as to whether we are required to *sua sponte* raise this issue.

Supreme Court of Missouri. *Id.* The Court then determined the merits of the question whether Truong was obligated to have a trial de novo in the circuit court or could seek a direct appeal. *Id.* at 404. Finding that Truong failed to timely seek a trial de novo in circuit court, the Court held there was no appellate jurisdiction to hear a direct appeal of the summary judgment. *Id.* at 404-05.

Likewise, in *Missouri Mun. League v. State*, 465 S.W.3d 904 (Mo. banc 2015), the Supreme Court was not deciding whether the denomination on an order of "Judgment" or the lack of the judge's signature on a judgment was jurisdictional, but rather whether the claim on appeal was moot. *Id.* at 905. The Court indicated that "mootness implicates the judiciability of a controversy and is a threshold issue in appellate review." *Id.* at 906. The court noted that when an appellate judgment would not have any practical effect upon any existing controversy, then an appellate decision is unnecessary. *Id.*

In *CACH, LLC v. Askew*, 358 S.W.3d 58 (Mo. banc 2012), the issue was whether the plaintiff in the case had standing to sue. *Id.* at 61. The issue of standing was raised in the Answer to the Petition. *Id.* at 60.

In *Spicer v. Donald N. Spicer Revocable Living Trust*, 336 S.W.3d 466 (Mo. banc 2011), the Court entered a "judgment" in a quiet title action and then attempted to set it aside after the expiration of thirty days provided by Rule 75.01. *Id.* at 468, 470. The Supreme Court held that the circuit court had no jurisdiction to set aside its earlier judgment. *Id.* at 470.

Finally, in an interesting, post-*J.C.W.* case, *Buemi v. Kerckhoff*, 359 S.W.3d 16 (Mo. banc 2011), while the case was pending, the trial court entered a monetary sanction against a party. *Id.* at 19. The court noted that the statutory requirement of section 512.020 requires the issuance of a "final judgment." *Id.* at 20. The Supreme Court did not address whether the order

10

for sanctions was denominated as a judgment but addressed the issue whether the order was a final judgment in that it resolved all issues in the case, leaving nothing for future determination".[9] *Id.* at 25. In fact, it called it an "order" throughout the opinion.[10] Because I would find that this Court has appellate jurisdiction over this appeal, I would address the merits of this appeal.

MERITS OF THE APPEAL

As noted, Movant requested forensic testing to prove that he was not a blood relative of the victim; his request was denied without an evidentiary hearing. His first point claims error in denying the motion because the "Prosecuting Attorney failed to show cause as ordered by the Court" why Movant was not entitled to a hearing on his motion. Movant's second point claims error in failing to have a hearing "so [Movant] could prove he was not guilty of the charges he was convicted on." Movant's third point claims the motion court erred for failing to issue findings of fact and conclusions of law. The State responds that the motion itself conclusively showed that Movant was not entitled to relief and no hearing was required.

To be entitled to post-conviction DNA testing under section 547.035, the motion must allege facts demonstrating:

(1) There is evidence upon which DNA testing can be conducted; and
(2) The evidence was secured in relation to the crime; and
(3) The evidence was not previously tested by the movant because:
(a) The technology for the testing was not reasonably available to the movant at the time of the trial;
(b) Neither the movant nor his or her trial counsel was aware of the existence of the evidence at the time of trial; or

---

[9] In addressing this issue *sua sponte*, the court cited *Gibson*, *see* notes 5 and 7, as support for such requirement.

[10] I question the "finality" of judgments if the post-*J.C.W.* cases decided under section 547.035 have been denominated "order." A cursory review of some of the cases indicates that some of the cases are denominated "judgment" and some "order." A decision that there is no final judgment allows those cases to remain pending indefinitely, awaiting the entry of a final judgment and then a subsequent appeal. Here, there is no question that the trial court did not seek to retain jurisdiction over this issue and the policy requiring the judge's signature and the denomination to be "judgment" would not serve the interests of the litigants or the appellate courts.

(c) The evidence was otherwise unavailable to both the movant and movant's trial counsel at the time of trial; and

(4) Identity was an issue in the trial; and

(5) A reasonable probability exists that the movant would not have been convicted if exculpatory results had been obtained through the requested DNA testing.

First, the State claims that it was not necessary for the State to respond because there was nothing on the face of the motion warranting relief. The motion itself failed to plead facts demonstrating that DNA testing was unavailable in 2008, when Movant's case went to trial, nor did it plead that Movant or his trial counsel were unaware of the existence of evidence to be tested or such evidence was unavailable to him. It appears from the face of the motion that the State's response is correct; therefore, Points I and II should be denied. Movant is not entitled to any relief in his motion for forensic testing. Movant knew at the time of the charges and the trial that the allegations were of incest. Testing for DNA to determine paternity was available in 2007, Movant and his counsel would have been aware of such testing, and the evidence would have been available to them had that been an issue at the time of trial.

Movant, in his third point, claims that the motion court erred in failing to make findings of fact and conclusions of law pursuant to section 547.035.8. It is correct that the motion court did not make any findings of fact and conclusions of law. The State argues that "postconviction cases are governed by the rules of civil procedure insofar as applicable" and cites *Atchison v. State*, 420 S.W.3d 559, 561 (Mo.App. S.D. 2013). Generally, under the civil rules of procedure, if a party challenging the failure to make statutorily required findings does not file a motion to amend the judgment, under Rule 78.07(c), the issue is not preserved for appellate review. *Id.* at 561. Although we have not found a case in which this rule has been applied to a motion for DNA testing, the purpose of Rule 78.07(c), to put the court on notice of the challenge and allow the motion court an opportunity to address the issues raised, applies to this type of case. As we

12

noted, Movant did not plead the elements necessary for relief. Additional findings are not necessary. *See **State v. Waters***, 221 S.W.3d 416, 419 (Mo.App. W.D. 2006) (where a movant does not allege facts to satisfy the elements required by Missouri post-conviction DNA testing, it is not necessary to remand for findings of fact and conclusions of law). I would hold that Rule 78.07(c) applies to a post-conviction motion for forensic testing. Point III should also be denied and the judgment should be affirmed.

For these reasons, I dissent from the majority opinion. Further, I certify that the majority opinion is contrary to a previous decision of an appellate court of this state and hereby transfer this case to the Supreme Court of Missouri pursuant to Rule 83.03.


Nancy Steffen Rahmeyer, J. – Dissenting Opinion Author