

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| IN THE INTEREST OF: A.B.W., )<br>)<br>JUVENILE OFFICER, )<br>)<br>           Respondent, )<br>)<br>v. )<br>)<br>)<br>)<br>A.B.W., )<br>)<br>           Appellant. ) | **WD85049**<br><br>**OPINION FILED:**<br>**February 28, 2023** |

**Appeal from the Circuit Court of Buchanan County, Missouri**
**The Honorable Patrick K. Robb, Judge**

**Before Division Three:** Thomas N. Chapman, Presiding Judge, and
Mark D. Pfeiffer and Cynthia L. Martin, Judges

A.B.W. appeals from the judgment and dispositional order entered by the Circuit Court of Buchanan County, Missouri ("juvenile court"), committing her to the custody of the Buchanan County Academy to complete a juvenile delinquency program. She asserts that the dispositional order was against the weight of the evidence. Because the issue is moot, we dismiss the appeal.

**Facts, Procedural History, and Issue on Appeal**

A.B.W. was born on March 27, 2006. A.B.W. has a long history of running away from numerous family members' homes who have tried to provide parenting to A.B.W. over the years. A.B.W.'s mother testified that A.B.W. had run away from various family members' homes fifteen or twenty times by the time of the disposition hearing relevant to the current proceeding. On some occasions, A.B.W. would be gone for days; other times, A.B.W. would be gone for weeks. Then, in July 2021, A.B.W. assaulted a police officer.

In September 2021, the Juvenile Officer of Buchanan County ("Juvenile Officer") filed a petition in the interest of A.B.W., alleging the delinquent offense of assault of a police officer and two additional status offenses for being habitually absent from her family home and beyond parental control. On appeal, A.B.W. does not contest the juvenile court's adjudication findings, concluding that the evidence established both delinquent and status offense misconduct by A.B.W. Instead, in A.B.W.'s appellate briefing, A.B.W.'s appellate counsel states: "In short, A.B.W.'s home life required judicial intervention."

What A.B.W. contests on appeal is the juvenile court's *dispositional* ruling.

At the disposition hearing in December 2021, the Juvenile Officer recommended that A.B.W. be committed to the Buchanan County Academy to complete a juvenile delinquency program because it was in A.B.W.'s best interest. The Juvenile Officer noted that the highly structured program of the Academy offered the best opportunity to rehabilitate A.B.W.'s delinquency, and it would be a program that would also facilitate medical care for A.B.W. and her unborn child. A.B.W. was approximately seven months

pregnant at the time of the disposition hearing, and her obstetrician was located in the same community as the Academy. Before A.B.W. was placed in detention,[1] she had not received prenatal care because she frequently ran away from home.

A.B.W., through counsel, requested that she be released to the custody of her mother, whom she claimed to want to mend her relationship with, and placed back in the community with any conditions, such as electronic monitoring. Alternatively, counsel for A.B.W. argued for the juvenile court to order A.B.W. committed to the Division of Youth Services rather than to the Buchanan County Academy. A.B.W. requested that she be placed with her mother.

A.B.W.'s mother stated that if A.B.W. came home, she would continue to run away: "I don't see it changing just because . . . she's pregnant. . . . She doesn't like rules. She doesn't want to be respectful."

The juvenile court entered its judgment on December 15, 2021, committing A.B.W. to the custody of the Buchanan County Academy to complete the juvenile delinquency program. In so doing, the juvenile court explained that the program at the Buchanan County Academy was located in A.B.W.'s hometown and that would promote the best opportunity for family counseling sessions that could include A.B.W.'s mother, and it would also promote continuity with her obstetrician. Further, the juvenile court advised A.B.W. that if she engaged in family counseling with her mother and attended

---

[1] Due to A.B.W.'s refusal to attend a previous status conference before the juvenile court, the juvenile court had issued a capias warrant for A.B.W., which led to her forcible detention in November 2021.

school as directed by the Academy's structured and secure program, the juvenile court would "look at getting [A.B.W.] back in the community on probation hopefully to make some more positive steps in the community."

On December 18, 2021, A.B.W. timely filed a notice of appeal from the juvenile court's December 15, 2021 judgment.

Of additional importance, when A.B.W. gave birth to her child in March 2022, the Juvenile Officer filed a motion to permit A.B.W. to be released from the Academy for one week to spend time with her newborn child before returning to the Academy to complete the juvenile delinquency program. That motion was granted and, thereafter, A.B.W. successfully completed the Academy's program several months later. The Juvenile Officer then filed another motion in July 2022 requesting that the juvenile court modify its December 2021 dispositional order to provide that A.B.W. be released from the Buchanan County Academy; be placed on probation, to be supervised by the Juvenile Office; and to be placed in the custody of her mother. On July 27, 2022, the juvenile court entered its order granting the Juvenile Officer's motion to modify.

In A.B.W.'s sole point on appeal, she asserts that the juvenile court erred in committing her to the custody of the Buchanan County Academy because the court's dispositional order was against the weight of the evidence. Specifically, she contends that her requested commitment to the Division of Youth Services would have accomplished the same goals as the juvenile court's dispositional order, but the Division

4

of Youth Services would not have forcibly separated her from her newborn child.[2]

A.B.W. requests that this Court reverse the juvenile court's judgment and remand the cause for a new dispositional hearing.

## Analysis

We first address the Juvenile Officer's contention that we should dismiss this appeal as moot. "A threshold question in any appellate review is the mootness of the controversy." *In re P.D.W.*, 606 S.W.3d 232, 235 (Mo. App. W.D. 2020) (internal quotation marks omitted). "An event rendering a decision unnecessary may occur at any time, including on appeal." *In re B.P.*, 547 S.W.3d 785, 788 (Mo. App. W.D. 2018). "'Even a case vital at inception of the appeal may be mooted by an intervenient event which so alters the position of the parties that any judgment rendered merely becomes a hypothetical opinion.'" *Id.* at 788-89 (quoting *Mo. Mun. League v. State*, 465 S.W.3d 904, 906 (Mo. banc 2015)).

Here, as the Juvenile Officer points out, A.B.W. has, at this time, received the very disposition that she and her counsel requested at the disposition hearing and, presumably, would be requesting upon a remand for a second dispositional hearing.

"[A] cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any

---

[2] A.B.W. presented no evidence or legal authority at the dispositional hearing or on appeal supporting A.B.W.'s argument that a placement at the Division of Youth Services would have mandated custodial placement of her child with her at the Division of Youth Services facility. Further, A.B.W. presented no evidence that A.B.W. would have even been placed at a Division of Youth Services facility in Buchanan County.

practical effect upon any then existing controversy." *P.D.W.*, 606 S.W.3d at 235 (internal

quotation marks omitted). "When an event occurs that makes a decision on appeal

unnecessary or makes it impossible for the appellate court to grant effectual relief, the

appeal is moot and generally should be dismissed." *M.L.H. v. Juv. Officer*, 634 S.W.3d

667, 672 (Mo. App. W.D. 2021) (internal quotation marks omitted).

There are only "'two narrow exceptions to the mootness doctrine.'" *P.D.W.*, 606

S.W.3d at 236 (quoting *D.C.M. v. Pemiscot Cnty. Juv. Off.*, 578 S.W.3d 776, 780 (Mo.

banc 2019)). *See also In re J.T.S.*, 462 S.W.3d 475, 479-80 (Mo. App. W.D. 2015).

"First, when a case becomes moot after submission of the case in the appellate court and

second, when the issue raised has general public interest and importance and is likely to

recur but otherwise evade review." *P.D.W.*, 606 S.W.3d at 235. Neither of these

exceptions apply in this case. The first exception does not apply because the

modification order was entered before the case was submitted by this Court, and even

prior to the appellant's brief being filed. The second exception does not apply because

the point on appeal does not present an issue of general public interest, in that the

dispositional relief sought is limited to a single individual.

Appellate courts in Missouri have found exceptions to the mootness doctrine to

reach the merits of cases from the juvenile court. *See M.L.H.*, 634 S.W.3d at 667; *In re*

*S.B.A.*, 530 S.W.3d 615 (Mo. App. E.D. 2017); *In re N.R.W.*, 482 S.W.3d 473 (Mo. App.

E.D. 2016); *T.S.G. v. Juv. Officer*, 322 S.W.3d 145 (Mo. App. W.D. 2010).[3] But those

_____

[3] *In re S.B.A.*, 530 S.W.3d 615, 621-22 (Mo. App. E.D. 2017) (finding an
exception to the mootness doctrine because there was a movement to make more juvenile

cases are factually distinguishable from A.B.W.'s case, in a critical way, in that the juveniles were challenging the initial *adjudication* of delinquency. *In re D.R.C.*, 588 S.W.3d 527, 533 (Mo. App. E.D. 2019). In *P.D.W.*, we noted that the Missouri Supreme Court in *D.C.M.* recognized an additional exception to the mootness doctrine "in the narrow context of juvenile delinquency adjudications." 606 S.W.3d at 235. "Specifically, that appellate courts may review a juvenile's claim that the court erred in entering an adjudication of delinquency where the issue has otherwise become moot because the juvenile reached the age of majority before the submission of the appeal if collateral consequences may flow from the adjudication." *Id*. at 236. We declined to expand this new exception beyond juvenile adjudications of delinquency "[w]ithout a clear pronouncement from the Supreme Court that it intends to more broadly create an exception to the mootness doctrine for all cases involving collateral consequences[.]" *Id*.

---

records public, and the record could have "other lifelong consequences and stigma"); *In re N.R.W.*, 482 S.W.3d 473, 475 (Mo. App. E.D. 2016) (finding appeal was not moot when juvenile was adjudicated delinquent for an offense that would have been considered a felony if committed by an adult); *T.S.G. v. Juv. Officer*, 322 S.W.3d 145, 148 (Mo. App. W.D. 2010) (finding an exception to the mootness doctrine where juvenile was initially adjudged to have committed sexual misconduct because of the "movement to make more juvenile records public"). "But in *S.B.A.* and *T.S.G.*, the court of appeals relied on the so-called 'significant collateral consequences' exception to the mootness doctrine, an exception not recognized by this Court." *D.C.M. v. Pemiscot Cnty. Juv. Off.*, 578 S.W.3d 776, 781 n.7 (Mo. banc 2019) (citing *S.B.A.*, 530 S.W.3d at 621-22; *T.S.G.*, 322 S.W.3d at 148). "In *N.R.W.*, the court found the case was not moot, as the collateral consequences the juvenile would suffer as a result of his prior adjudication constituted an existing controversy." *Id*. (citing *N.R.W.*, 482 S.W.3d at 475). In *M.L.H. v. Juvenile Officer*, 634 S.W.3d 667 (Mo. App. W.D. 2021), the court found that the case was not moot, "due to 'the discredit and stigma associated with [his] record of adjudication,' and the potential future consequences of that adjudication." *Id*. at 672.

7

Here, A.B.W. does not contest the juvenile court's *adjudication* that she committed the charged delinquent and status offenses. "Thus, collateral-consequences concerns are not an issue in this case, calling for us to exercise our discretion and consider the merits of this appeal." *D.R.C.*, 588 S.W.3d at 533. Rather, A.B.W. solely challenges the juvenile court's *dispositional* ruling committing her to the Buchanan County Academy and seeks remand for a new dispositional hearing. Implicitly, she seeks release from her prior commitment to the custody of the Buchanan County Academy. However, the juvenile court has already ordered that she be released from the Academy and placed on supervised probation in the custody of her mother. This is all the relief A.B.W. previously requested, and it is the relief she has received. *Id.* at 532. "[W]e are hard-pressed to see what effect a remand would have. We cannot un-ring a bell." *Id.*

"[A] cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." *P.D.W.*, 606 S.W.3d at 235 (internal quotation marks omitted). Resolution by this Court of A.B.W.'s assertion of error regarding the juvenile court's dispositional order committing her to the custody of the Buchanan County Academy would not have any practical effect upon any existing controversy.[4] "When an event occurs that makes a decision on appeal unnecessary or

_____

[4] Although we decline to review A.B.W.'s case on the merits, we note that a review of the record indicates that there was sufficient evidence to support the juvenile court's December 15, 2021 judgment and dispositional order. The evidence demonstrates that the juvenile court was thoughtful in its ruling, one that it felt would "facilitate the care, protection and discipline of [A.B.W.] who c[a]me within the jurisdiction of the

makes it impossible for the appellate court to grant effectual relief, the appeal is moot and generally should be dismissed." *M.L.H.*, 634 S.W.3d at 672 (internal quotation marks omitted).

## Conclusion

This appeal is moot, and no exception applies for us to exercise our discretion and reach the merits. Accordingly, the appeal is dismissed.

/s/ *Mark D. Pfeiffer*
Mark D. Pfeiffer, Judge

Thomas N. Chapman, Presiding Judge, and Cynthia L. Martin, Judge, concur.

---

juvenile court" and would serve the "best interests" of both A.B.W. and the State. *See* § 211.011 RSMo 2016.